905 F.2d 1276
 66 A.F.T.R.2d 90-5125, 90-1 USTC P 50,310,
30 Fed. R. Evid. Serv. 570
 UNITED STATES of America; Darrell G. Henderson, Special
Agent, Internal Revenue Service,
Petitioner/Appellee-Cross-Appellant,
v.
Charles L. ABRAHAMS, Respondent/Appellant-Cross-Appellee.
 Nos. 88-5901, 88-5653.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 1, 1989.
Decided June 8, 1990.
 
 William S. Rose, Jr., Gary R. Allen, Charles E. Brookhart, and John A. Dudeck, Jr., Tax Div., U.S. Dept. of Justice, Washington, D.C., for petitioner/appellee-cross-appellant.
 Charles L. Abrahams, La Mesa, Cal., in pro per.
 Appeal from the United States District Court for the Southern District of California.
 Before HUG, CANBY, and BOOCHEVER, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 The United States appeals from an order of the district court granting limited enforcement of a summons issued by the Internal Revenue Service. Charles Abrahams, the summonee, cross appeals. We affirm in part, vacate in part, and remand.
 
 I. FACTS
 
 2
 Abrahams is an attorney who prepares income tax returns for his clients, and also represents many of them in disputes with the Internal Revenue Service before the Tax and Claims Courts. As a preparer, Abrahams' routine practice has been to file amended client returns, which claim new deductions, just before the close of the statutory three-year period for assessing tax liability. The IRS is investigating this conduct; in particular, it seeks to determine whether Abrahams advised or aided the filing of false or fraudulent returns, improperly omitted information on original returns so that he could later file amended returns, lacked sufficient factual basis for information submitted on the amended returns, or filed amended returns without informing his clients.
 
 
 3
 Acting pursuant to 26 U.S.C. Sec. 7602, the IRS issued a summons directing Abrahams to produce material relevant to his preparation of client returns from 1978 to 1984.[1] Abrahams objected that the summons called for virtually all of his files and that it allowed only twelve days for compliance. The IRS responded by limiting its request to documents used in preparing returns for thirty-nine named clients, extending the deadline fifteen days, and offering clerical assistance. Abrahams refused to comply.
 
 
 4
 As authorized by 26 U.S.C. Sec. 7604(b), the IRS filed a petition in district court to compel compliance with the summons. The IRS presented a declaration by the special agent conducting the Abrahams investigation, who stated that his purpose was "to determine whether [Abrahams] wilfully aided or assisted or procured, counseled or advised the preparation of federal income tax returns which are fraudulent or false," particularly with respect to deductions claimed on amended returns. Henderson Declaration at 2-3. Abrahams responded by alleging that the summons had been issued "solely to unearth evidence of criminal conduct"; to gather information for the Justice Department to use against him and for the IRS Audit Division to use against his clients; and "to harass [Abrahams] by disturbing his relationship with his clients." Abrahams also argued that the summons was "overbroad and burdensome," and that the demanded documents were protected by the attorney-client privilege and the work-product doctrine.
 
 
 5
 Following a hearing, the court ordered partial compliance: Abrahams was to produce documentation used in his preparation of twenty "representative" returns (of Abrahams' choosing) for each of the years in question. The court also ordered that the IRS, in pursuing its investigation of Abrahams, was not to interview any of Abrahams' clients unless Abrahams was present in his capacity as counsel.[2]
 
 
 6
 The United States and Abrahams appealed to this court, which (in an unpublished disposition) reversed and remanded for a limited evidentiary hearing on Abrahams' allegations of bad faith and harassment. See United States v. Abrahams, 833 F.2d 1017 (9th Cir.1987). At that hearing, Abrahams examined the special agent investigating him and three other agents involved in his clients' cases. The district court then concluded that Abrahams had not substantiated his charges. The court again ordered enforcement, with the same restrictions imposed previously.
 
 
 7
 Both parties now appeal once more.
 
 II. ABRAHAMS' APPEAL
 
 8
 Abrahams contends that the lower court erred (1) in finding that the summons had been issued in "good faith," as required for enforcement, (2) in denying his request for discovery, (3) in concluding that the summons met the fourth amendment standard of reasonableness, and (4) in dismissing his claims of protection deriving from the attorney-client privilege and the work product doctrine. We disagree, and affirm the district court's decisions on these issues.
 
 
 9
 A. The Good Faith Elements.
 
 
 10
 Contrary to Abrahams' contention, the summons satisfied the requirements for enforcement. In order to establish a prima facie case, the IRS had only to make a "minimal" showing that it issued the summons for a legitimate purpose, and that the information sought in the summons was relevant to that purpose. Stuart v. United States, 813 F.2d 243, 248 (9th Cir.1987) (citing United States v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 254-55, 13 L.Ed.2d 112 (1964)).[3] Declarations by the special agent that he was investigating Abrahams for possible improper conduct in preparing clients' returns and that the summoned material was necessary for the investigation satisfied the minimal standard. Liberty Financial Services v. United States, 778 F.2d 1390, 1392 (9th Cir.1985). The prima facie case having been made, a "heavy" burden fell upon Abrahams to disprove the IRS assertions. Id. The record developed below indicates that the district court committed no "clear error" in concluding that Abrahams had failed to carry that burden. Ponsford v. United States, 771 F.2d 1305, 1308 (9th Cir.1985).
 
 
 11
 1. Purpose.
 
 
 12
 Abrahams' objection to the district court's finding of legitimate purpose raises two distinct issues, one a question of law and the other a question of fact. First, Abrahams argues that the summons is invalid because tax collection was not the IRS' objective in issuing it. Abrahams is right that the investigation is not aimed at collecting taxes from him, but he is plainly wrong that the summons power may be used only for that purpose. The IRS may issue a summons in order to "inquir[e] into any offense connected with the administration or enforcement of the internal revenue laws." 26 U.S.C. Sec. 7602(b). Improper conduct in the preparation of clients' returns clearly constitutes "an offense connected with the administration and enforcement" of the tax laws, and therefore falls within the scope of the summons power.[4]
 
 
 13
 Secondly, Abrahams argues that, despite its claims to the contrary, the IRS issued the summons in order to gain information for use in the Tax and Claims Court cases and to harass him because he represents clients against the IRS. More specifically, Abrahams offered two factual circumstances as evidence of that allegation: (1) the name of an IRS lawyer handling Tax Court litigation involving Abrahams' clients appeared as part of an intra-office reference code in the margin of a letter to Abrahams from the special agent handling his investigation; (2) when leaving the District Counsel's office after an unsuccessful effort to have the Counsel stipulate to an agreement in his clients' cases, Abrahams encountered the special agent who issued the summons.[5]
 
 
 14
 Under extended questioning by Abrahams' counsel at the hearing, the special agent directing the Abrahams investigation held fast to his assertion that he issued the summons to inquire into possible improper conduct by Abrahams as a preparer of his clients' returns. None of the witnesses testified that anyone involved in the client cases suggested, encouraged or participated in issuing the summons to Abrahams. Hence, as the district court found, Abrahams was not able to show that the purpose stated by the IRS was "merely camouflage for an ulterior non-tax motive." United States v. Zolin, 809 F.2d 1411, 1416 (9th Cir.1987), aff'd in part and vac'd in part on other grounds, --- U.S. ----, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989).
 
 2. Relevance.[6]
 
 15
 Abrahams' argument that the summons demands documents that are not relevant to the IRS purpose is meritless. The IRS is investigating Abrahams' conduct in preparing his clients' tax returns; nothing is more likely to "throw light" on that subject than the documents supplied to him by his clients or generated by him for the purpose of filing those returns. Zolin, 809 F.2d at 1414 (defining standard of relevance for IRS summons).
 
 
 16
 B. Discovery.
 
 
 17
 The district court's refusal to grant Abrahams' request for discovery was not reversible error. Because the proceeding was one for summons enforcement, in which discovery is "the exception rather than the rule," the district court had "great discretion" in answering Abrahams' request, and its decision on the issue must stand unless it has abused that discretion. United States v. Church of Scientology, 520 F.2d 818, 824 (9th Cir.1975); Wang v. United States, 757 F.2d 1000, 1004 (9th Cir.1985). Our review of the record below leaves us far from "a definite and firm conviction that the district court committed a clear error of judgment" in refusing to permit Abrahams to engage in discovery. Abatti v. Commissioner, 859 F.2d 115, 117 (9th Cir.1988) (defining the standard of reversal for abuse of discretion).
 
 
 18
 By holding an evidentiary hearing, the court provided an opportunity for Abrahams to demonstrate, at the least, that further inquiry, including discovery, was warranted on the issue of proper purpose. See United States v. Samuels, Kramer and Co., 712 F.2d 1342, 1347 (9th Cir.1983). Although Abrahams was able at the hearing to examine the special agent investigating him as well as several agents involved in his clients' Tax and Claims Court cases, there was no indication of any improper interplay between the two investigative groups. Given this outcome, the court acted well within its discretion in concluding that Abrahams had failed to prove the likely existence of any discoverable material to substantiate his claims.
 
 
 19
 C. Fourth Amendment.
 
 
 20
 The district court was correct to reject Abrahams' contention that the summons violates the fourth amendment prohibition against unreasonable searches and seizures.[7] Contrary to Abrahams' assertions, the summons is not constitutionally deficient in either justification or specificity. With regard to the former, satisfaction of the Powell requirements served to ensure that the summons did not violate the fourth amendment by lacking sufficient cause. See United States v. McAnlis, 721 F.2d 334, 337 (11th Cir.1983), cert. denied, 467 U.S. 1227, 104 S.Ct. 2681, 81 L.Ed.2d 877 (1984); United States v. Roundtree, 420 F.2d 845, 849-50 (5th Cir.1969). As for specificity, the summons described the requested documents in enough detail to inform Abrahams of exactly what he was to produce.[8]
 
 
 21
 D. Privilege.
 
 
 22
 Abrahams asserted below that all the information demanded by the IRS was protected against disclosure by the attorney-client privilege. The government claimed that none of it was. At the first hearing, the district court made an oral ruling in favor of the government's position, but failed to give any reason for its decision. That failure has hampered us to some extent in reviewing this issue. See Zolin, 809 F.2d at 1417 (rulings on the scope of the attorney-client privilege involve mixed questions of law and fact, and are reviewable de novo; rulings on essentially factual matters underlying claims of privilege are reviewable for clear error). Nonetheless, having considered the arguments presented here and in the district court, as well as the supporting material in the record, we conclude that the court's rejection of the privilege must be upheld, whatever its rationale, because Abrahams failed to introduce sufficient evidence on several issues critical to the application of the privilege.
 
 
 23
 It was incumbent upon Abrahams, as the one claiming an evidentiary privilege,[9] to make a particular assertion with respect to each specific category of requested information to which he claimed the privilege applied. United States v. Lawless, 709 F.2d 485, 487 (7th Cir.1983); see also United States v. Bell, 448 F.2d 40, 42 (9th Cir.1971) (requiring IRS summons respondent who claimed privilege against self-incrimination to assert his claim question-by-question). In the proceedings below, however, Abrahams made particular assertions of privilege for only three categories: the identities of the clients for whom he prepared tax returns, details of the fee arrangements between him and his clients for tax return preparation, and the information his clients supplied on questionnaires that he apparently sent to them each year. See Response to Petition To Enforce at 44-53. Because he did not make particularized assertions of privilege for any of the other data sought by the summons, the district court's ruling is certainly correct to the extent that it rejected Abrahams' claim of privilege for all but the three stated categories of summoned information.
 
 
 24
 Abrahams had the burden of establishing that the information in these three categories satisfied all of the conditions necessary for the privilege. United States v. Flores, 628 F.2d 521 (9th Cir.1980).[10] His showing, however, was meager, amorphous, and ultimately inadequate. In particular, he failed to introduce evidence that his clients had communicated this information in confidence and in order to seek legal advice. Absent such evidence, the claim of privilege must fail.
 
 
 25
 With respect to the first two categories, Abrahams lacks any basis in law or fact for invoking the privilege. The names and fee arrangements of his clients "are not confidential communications protected by the attorney-client privilege." In re Osterhoudt, 722 F.2d 591, 592 (9th Cir.1983) (citation omitted) (stating the general rule). Nothing in the record suggests that the instant case is one of the very few "exceptional" ones, in which disclosing such information "would be tantamount to revealing [a previously unidentified client's] involvement in [a crime]." Tornay, 840 F.2d at 1427-28.[11] By filing their signed returns, Abrahams' clients already have associated themselves with whatever deductions they have chosen to make; the disclosure of their names and their fee arrangements with Abrahams for tax return preparation cannot contribute an incriminating link that the returns themselves would not establish.
 
 
 26
 What remains is Abrahams' assertion that the privilege protects the information his clients supplied on the questionnaires. Abrahams argues that this data is protected automatically and in full because it was conveyed to him while tax litigation involving these clients was either pending or anticipated. We know of no authority supporting a presumptive application of the attorney-client privilege in these circumstances. On the contrary, Abrahams' proffered principle obviously proves too much: a client may communicate the figures from his W-2 Form to an attorney while litigation is in progress, but this information certainly is not privileged.
 
 
 27
 For its part, the IRS argues that the questionnaire information is automatically unprotected because the clients completed the questionnaires in order to allow Abrahams to prepare their returns. We cannot fully accept that contention. Although communications made solely for tax return preparation are not privileged, communications made to acquire legal advice about what to claim on tax returns may be privileged. See Olender v. United States, 210 F.2d 795, 806 (9th Cir.1954) (noting that privilege is inapplicable to communications made to enable a practitioner "to simply prepare a federal income tax return"; and denying claim of privilege where evidence indicated that respondent sought only preparation of return by attorney/accountant and went elsewhere for legal advice about making certain disclosures on return); United States v. Gurtner, 474 F.2d 297, 298-99 (9th Cir.1974). Abrahams' representation of his clients went beyond the mere preparation of tax returns. He was therefore entitled to the opportunity, which the district court afforded him, to show that his clients, in submitting the questionnaires, were seeking legal advice rather than simple return preparation.
 
 
 28
 Abrahams, however, made little of that opportunity. In support of the claim, he offered the declarations of five clients and an excerpt from the questionnaire. This evidence fell far short of establishing that the questionnaire information satisfied all of the tests for application of the privilege. All five of the declarations simply invoke the privilege in the broadest possible terms.[12] Four of the five do not mention the questionnaire information at all.[13] In addition, with only one exception, all of the declarations state simply that the clients hired Abrahams to prepare their returns.[14] In sum, none of the declarations indicates clearly whether the questionnaire information was submitted in confidence in order to gain legal advice. Nor does the excerpt shed light on these matters. Six of the seven questions Abrahams quoted deal directly with tax return information; the other asks whether the client would like to join an antitrust action in the event that Abrahams were to bring one in the future. In light of Abrahams' failure to produce evidence that the information satisfied these essential conditions, rejection of the privilege claim was proper as it applied to the questionnaires.
 
 
 29
 Thus, for the several reasons here discussed, we uphold the district court's decision fully denying Abrahams' claim of attorney-client privilege.[15]
 
 III. UNITED STATES' APPEAL
 
 30
 The United States contends that the district court erred (1) by limiting the scope of the summons to a "representative sample" of material, and (2) by imposing restrictions on IRS interviews with Abrahams' clients. We agree that these rulings represent reversible errors.
 
 
 31
 A. Limitation of Scope to "Representative Sample" of Data.
 
 
 32
 By compelling Abrahams to produce only material relating to twenty returns per year, the district court, in effect, refused to enforce the remainder of the summons. This implicit refusal, however, is at odds with the court's finding that the IRS has met all of Powell 's requirements for enforcement. Given that finding, as well as the lack of any applicable constitutional bars or privilege-based protections, the IRS was entitled to enforcement of the summons. Cf. United States v. Giordano, 419 F.2d 564, 569 (8th Cir.1969) ("[E]very document demanded would relate to the [subject matter of the IRS investigation] and, of course, the Government has the statutory right to this information.").
 
 
 33
 Three considerations appear to have informed the district court's decision to withhold full enforcement. First, the judge considered the volume of material demanded to be very great.[16] However, "[t]he fact that the records called for [are] extensive is not material [to the enforceability of the summons]." United States v. Luther, 481 F.2d 429, 432-33 (9th Cir.1973); see also United States v. Ruggeiro, 425 F.2d 1069, 1070-71 (9th Cir.1973). Accord Tiffany Fine Arts, Inc. v. United States, 469 U.S. 310, 323, 105 S.Ct. 725, 731-32, 83 L.Ed.2d 678 (1985) (rejecting summonee's argument that IRS could pursue its investigation adequately with only a portion of what it demanded, and explaining that IRS need not proceed "in the least intrusive way").
 
 
 34
 Second, the judge sought to limit the burden on Mr. Abrahams.[17] We need not decide here whether burdensomeness may be a valid ground for nonenforcement of an IRS summons. Compare United States v. Davey, 543 F.2d 996, 1000 (2d Cir.1976) (stating in dicta that summons may not be "excessively burdensome") with Ruggeiro, 425 F.2d at 1070-71 (rejecting claim that summons was too burdensome); Tax Liabilities of John Does v. United States, 866 F.2d 1015, 1020-21 (8th Cir.1989) (same); United States v. Southwestern Bank & Trust Co., 693 F.2d 994, 996 (10th Cir.1982) (same). Apart from conclusory claims of burdensomeness, Abrahams makes no attempt to demonstrate just how and to what extent compliance would cause him hardship; such a speculative assertion as Abrahams makes does not suffice to defeat enforceability. Cf. Kelley v. United States, 536 F.2d 897, 899 (9th Cir.1976) (rejecting, for lack of evidentiary support, summonee's claim that enforcement would disrupt business), cert. denied, 429 U.S. 1047, 97 S.Ct. 756, 50 L.Ed.2d 762 (1977). Moreover, the burden of compliance was an especially inappropriate ground for non-enforcement in light of the IRS' offer to seek only documents used in preparing returns for thirty-nine named clients and to assist Abrahams in collecting and producing the responsive material. See Ruggerio, 425 F.2d at 1071; United States v. Dauphin Deposit Trust Co., 385 F.2d 129, 131 (3d Cir.1967), cert. denied, 390 U.S. 921, 88 S.Ct. 854, 19 L.Ed.2d 981 (1968). If the district judge remained convinced that Abrahams would face undue hardship, he could have considered recourse to provisions of the Internal Revenue Code authorizing the IRS to bear some costs of production in certain circumstances. See 26 U.S.C. Sec. 7610; Southwestern Bank & Trust Co., 693 F.2d at 996 (reversing district court's refusal to enforce fully a summons requiring review of 10 million documents, but suggesting possibilities for IRS assistance).
 
 
 35
 Thirdly, the judge determined that the level of IRS suspicion did not warrant enforcement of the summons in toto, that the IRS would need to establish probable cause in order to justify full enforcement.[18] In unequivocal language, however, the Supreme Court has declared repeatedly that the IRS "need not meet any standard of probable cause to obtain enforcement of [a] summons." United States v. Powell, 379 U.S. at 57, 85 S.Ct. at 255; United States v. Bisceglia, 420 U.S. 141, 146, 95 S.Ct. 915, 918-19, 43 L.Ed.2d 88 (1975); United States v. Arthur Young & Co., 465 U.S. 805, 813 n. 10, 104 S.Ct. 1495, 1500 n. 10, 79 L.Ed.2d 826 (1984). Following that principle, we hold that the district court erred in requiring the IRS to show probable cause in order to obtain full enforcement of a summons demanding a large number of documents.
 
 
 36
 Our precedents for denying enforcement or excluding certain documents from otherwise enforceable summonses are easily distinguishable from this case. Those denials and exclusions followed determinations that the summonses in question called for production of irrelevant or privileged material. See, e.g., United States v. Goldman, 637 F.2d 664, 667 (9th Cir.1980) (irrelevance); Luther, 481 F.2d at 433 (irrelevance); United States v. Ellsworth, 460 F.2d 1246, 1248 (9th Cir.1972) (privilege); United States v. Cohen, 388 F.2d 464, 465-66 (9th Cir.1967) (privilege). No appellate decision in this circuit, and none of which we are aware in any other circuit, has ever affirmed a refusal to enforce a Sec. 7602 summons that satisfied the Powell requirements and sought only relevant and unprivileged documents.[19]
 
 
 37
 B. Restriction on Interviewing Abrahams' Clients.
 
 
 38
 The district court's ruling that IRS agents investigating Abrahams may not interview his clients without Abrahams' being present constitutes an abuse of the court's "considerable discretion" in setting the terms of the order of enforcement. Author Services, Inc., 804 F.2d at 1525. The IRS filed the petition for enforcement under a narrow grant of jurisdiction that carefully circumscribes the appropriate subject matter. See 26 U.S.C. Secs. 7402, 7604. "From inception through hearing," the proceeding "was strictly limited to granting or denying enforcement of the terms of the specific summons." United States v. First National State Bank of New Jersey, 540 F.2d 619, 624-25 (3d Cir.1976).
 
 
 39
 As the product of such a proceeding, the district court's order should have been correspondingly narrow: terms dealing with aspects of the summons itself were permissible, but those dealing with elements of the IRS investigation not directly related to the summons were not. Accord id. at 625 (restricting inquiry at Powell hearing to IRS issuance of summons, and disallowing questions about IRS investigation in general because "permit[ting] inquiry into areas unrelated to the enforcement of the summons ... violates ... Congressionally mandated procedure"). The conduct of interviews in the Abrahams investigation is well removed from the issue of summons enforcement, and therefore outside the boundaries of the court's role in the proceeding.[20]
 
 IV. CONCLUSION
 
 40
 We affirm the district court's conclusion that the summons satisfies the requirements of Powell and is not violative of the fourth amendment or the attorney-client privilege; we also affirm the court's denial of Abrahams' request for discovery. We vacate that part of the district court's order of enforcement that limits compliance with the summons to twenty returns per year and restricts the conduct of IRS interviews with Abrahams' clients. The government is entitled to its costs.
 
 
 41
 AFFIRMED IN PART; VACATED IN PART; REMANDED.
 
 
 
 [1]
 The summons demanded that Abrahams produce "[a]ll documents relating to the preparation of income tax returns for others for [1978 to 1984]," and included a nonexclusive list of six categories of materials
 Abrahams' protestations at a hearing before the district court exposed two ambiguities in the language of the summons. First, if "relating to" is read very liberally, the summons covers all the material for Abrahams' Tax and Claims Court litigation, since these cases "relate to" what was claimed on clients' tax returns. In written and oral presentations below, however, the IRS made clear that it does not seek Abrahams' litigation files; what it requires are the documents used by Abrahams in preparing the client returns. Transcript of July 25, 1986 (hereinafter "Tr.1") at 16-17. Second, if "the preparation of income tax returns" is read liberally, the summons extends to the preparation of returns by persons other than Abrahams. The government's petition to enforce, however, indicates that the IRS is interested only in Abrahams' preparation of returns. See Petition at 2, p 6. We interpret the language of the summons as conforming to these common-sense clarifications, and our view that the summons is enforceable depends upon that interpretation. On remand, the district court may state the clarifications in its order of enforcement, or require that the IRS alter the summons to reflect them.
 
 
 [2]
 The court also imposed two other conditions on enforcement: the agents investigating Abrahams were not to release any information acquired by the summons to agents involved in the Tax and Claims Court litigation with Abrahams' clients; the IRS could not demand that Abrahams produce any material already furnished to the IRS (e.g., Forms 1040, 1099 and W-2). The government has not appealed those restrictions
 
 
 [3]
 A prima facie case includes, in addition, minimal showings that the information sought is not in the possession of the IRS, and that the IRS has followed all administrative steps required by statute. Stuart, 813 F.2d at 248. These requirements are not at issue in this case. At the first hearing in the district court, the IRS conceded that it could itself retrieve some of the requested documents (e.g., Forms 1040, 1099 and W-2), and declared that it did not seek enforcement of the summons with respect to these items. Reply to Abrahams' Response at 8. Moreover, the court excluded from its enforcement order any documents that have already been furnished to the IRS. Abrahams has raised no question about compliance with administrative procedures
 
 
 [4]
 Abrahams objects that the IRS may not issue a summons if it is solely interested in investigating a possible criminal violation. That his suspected offense may be criminal rather than civil, however, does not defeat the propriety of the summons. True, the civil/criminal distinction was once critical. See, e.g., Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 513-14, 11 L.Ed.2d 459 (1964) (no enforcement if summons seeks evidence for criminal prosecution); Donaldson v. United States, 400 U.S. 517, 532-33, 91 S.Ct. 534, 543-44, 27 L.Ed.2d 580 (1971) (no enforcement if summons is issued solely for criminal prosecution); United States v. LaSalle National Bank, 437 U.S. 298, 316, 98 S.Ct. 2357, 2367, 57 L.Ed.2d 221 (1978) (no enforcement if "institutional" motive, as opposed to individual agent's motive, in issuing summons is criminal prosecution). The 1982 enactment of Sec. 7602(b), however, broadened the summons power to include "any offense connected with" the tax laws, and thereby rendered the distinction irrelevant. See Stuart, 813 F.2d at 248-49; United States v. Millman, 822 F.2d 305, 308 (2d Cir.1987); Pickel v. United States, 746 F.2d 176, 183-84 (3d Cir.1984); LaMura v. United States, 765 F.2d 974, 980 n. 9 (11th Cir.1985). At present, the only restriction in this regard is that the IRS may neither issue nor move to enforce a summons if the IRS has referred the summonee's case to the Justice Department. 26 U.S.C. Sec. 7602(c); Stuart, 813 F.2d at 248-49
 
 
 [5]
 Abrahams further urges that, by demanding documents respecting deductions whose validity is at issue in, and to be determined by, the Tax and Claims Court actions, the IRS betrayed its lack of a legitimate purpose in issuing the summons. This argument misses the point that the focus of the inquiry is Abrahams' conduct as a preparer, not the tax liability of his clients
 
 
 [6]
 The district court's formal disposition stated that the IRS had satisfied all of the Powell requirements, one of which is relevance. Nevertheless, at several points during the hearing, the judge described the summons as "overbroad." "Overbreadth" has an uncertain meaning, however, and has been known to cause considerable confusion when it crops up in relation to the enforceability of an IRS summons. See, e.g., United States v. Wyatt, 637 F.2d 293, 301-02 (5th Cir.1981). In view of the judge's more specific statements, we interpret the finding of "overbreadth" as expressing concerns about excessive burden and lack of specificity, rather than relevance. See sections II.C and III.A, infra
 
 
 [7]
 Cf. Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 209, 66 S.Ct. 494, 505-06, 90 L.Ed. 614 (fourth amendment requires that order of production describe documents with particularity and not be excessive for purpose of inquiry); United States v. Dauphin Deposit Trust Co., 385 F.2d 129, 131 (3d Cir.1967) (applying Oklahoma Press Publishing Co. to IRS summons); Hubner v. Tucker, 245 F.2d 35, 38-40 (9th Cir.1957) (reversing enforcement order because "general" IRS summons was unreasonable); Local 174 v. United States, 240 F.2d 387, 390-91 (9th Cir.1956) (same)
 
 
 [8]
 Despite ruling that the summons did not violate the fourth amendment, the district court did express concerns about specificity. See Tr. 1 at 7-8. The perceived problem, however, seems to have been that the summons did not provide Abrahams with a list of the client returns in which the IRS was interested. Although the court's eventual decision to enforce only partial compliance mooted this point, the IRS made clear at the hearing that it was interested in all of the client returns Abrahams prepared during the years in question, and was amenable to producing a list of client names if requested to do so
 
 
 [9]
 Of course, Abrahams, as the attorney in the attorney-client relationships, may not assert the privilege for himself. In the proceedings below, he filed declarations by several of his clients in which they professed support for his refusal to disclose information that they supplied to him. We therefore understand Abrahams to be claiming the privilege on behalf of his clients
 
 
 [10]
 The privilege protects only (1) communications (2) made in confidence (3) by the client (4) in the course of seeking legal advice (5) from a lawyer in his capacity as such, and applies only (6) when invoked by the client and (7) not waived. See, e.g., Flores, 628 F.2d at 526; United States v. Landof, 591 F.2d 36, 38 (9th Cir.1978)
 
 
 [11]
 Baird v. Koerner, 279 F.2d 623 (9th Cir.1960) and Tillotson v. Boughner, 350 F.2d 663 (7th Cir.1964), which Abrahams cites, are inapposite. Those were "conscience payment cases" in which an attorney assisted in filing an anonymous return on behalf of a client who wished to remedy a previous understatement of tax without triggering a fraud investigation. Abrahams has not stated that he filed an anonymous return for any client
 
 
 [12]
 See, e.g., Declaration of Ralph Mitchell, p 5 ("I do not waive and urge Mr. Abrahams not to waive any right I have to withhold documents which are privileged by the attorney-client privilege."); Declaration of Douglas Favell, p 7 ("I do not want any documents produced which should not be produced because of the attorney-client privilege or any document that pertains to any tax year because they all are, or will be, part of the Claims Court cases....")
 
 
 [13]
 The one declaration specifically asserting that the questionnaire information was conveyed in confidence does not indicate any purpose in conveying the information other than to have Abrahams prepare the client's returns. See Declaration of William Tucker, pp 1, 2
 
 
 [14]
 See, e.g., Favell Declaration at p 1 ("[I declare t]hat Mr. Abrahams has prepared tax returns for me since 1970 and amended my 1968 return and every U.S. return since then."); Declaration of Nick Owcharuk, p 9 ("I hired Mr. Abrahams to do a job and that job was to amend returns."). The one exceptional declaration mentions an ERISA action that Abrahams handled; but there is no indication that the client communicated information on the questionnaire in order that Abrahams might advise him about the ERISA claim. See Declaration of Ralph Mitchell
 
 
 [15]
 Abrahams also claimed that the work-product doctrine protected the information demanded by the summons. The claim is without merit. Abrahams emphatically argued that the summons demanded that he turn over all of his litigation files. In fact, the summons requests documents used by Abrahams in the preparation of client returns. As its counsel made abundantly clear at the hearing, the IRS is not demanding Abrahams' legal research or work product for the clients' Tax and Claims court cases. See note 1 supra
 
 
 [16]
 See Tr. 1 at 5 ("You're asking this man to release to you an inordinate amount of information...."); Transcript of July 30, 1986 (hereinafter "Tr.2") at 16 ("I don't want you to go in for [documentation relating to Abrahams' preparation of] 300 or 400, or 250 [returns], you know.")
 
 
 [17]
 See Tr. 1 at 7 ("I would like to narrow the burdensome effect on Mr. Abrahams.")
 For the purpose of analyzing whether to enforce a summons, we think it wise to distinguish between the extensiveness of the demand and the burdensomeness of compliance. We can imagine circumstances, particularly where recordkeeping is computerized, in which producing very great quantities of material would be fairly simple and inexpensive; on the other hand, under some circumstances, locating one or a few specific documents could tax the resources of even a large enterprise. See, e.g., Tax Liabilities of John Does, 866 F.2d 1015 (8th Cir.1989) (summonee claimed search for the relatively few responsive documents would take between five and eleven months and cost between $14,000 and $40,000); United States v. Southwestern Bank & Trust Co., 693 F.2d 994 (10th Cir.1982) (summonee would have to review up to 10 million transaction items to find checks cashed by three individual taxpayers).
 
 
 [18]
 See Tr. 2 at 21 ("If you [the IRS] find after [seeing a representative sample] violations that you can point to and that the court can accept, rather than suspicion, if you find violations, they don't have to be indictable, you understand, if you find reasonable and probable cause ... to believe that there are violations occurring, [then the IRS could demand all the information the summons lists].")
 
 
 [19]
 Abrahams' citations do not support the district court's denial of full enforcement. Although United States v. Harrington, 388 F.2d 520 (2d Cir.1968), remarks that an enforceable IRS summons must not be "out of proportion to the end sought," it affirmed enforcement of a summons on the ground that the demanded information was relevant. None of the cases citing the Harrington remark used it as the basis of decision. United States v. Richards, 631 F.2d 341 (4th Cir.1980), affirmed denial of enforcement because summoned information was not relevant to tax liability, which, under the then-existing statute (now Sec. 7602(a)), was the only legitimate basis for issuing summons. United States v. Theodore, 479 F.2d 749 (4th Cir.1973), denied enforcement of a summons calling for all of a tax preparer's records because, under court's theory of the then-existing statute (now Sec. 7602(a)), IRS had to identify returns in which it was interested. United States v. Humble Oil & Refining Co., 488 F.2d 953 (5th Cir.1974), affirmed a denial of enforcement because IRS may not use summons power simply to provide data for a research project. United States v. Wyatt, 637 F.2d 293 (5th Cir.1981), reversed denial of enforcement because information demanded was relevant and court erroneously declared summons "overbroad." Tax Liabilities of John Does, 866 F.2d at 1020-21, affirmed enforcement despite fact that likely recovery of tax revenue was less than cost of compliance with summons. United States v. Coopers & Lybrand, 550 F.2d 615 (10 Cir.1977), affirmed denial of enforcement because demanded documents were not relevant
 
 
 [20]
 Our position in Zolin, which affirmed an order restricting dissemination of information acquired through the summons, is not inconsistent with the one we take here. The Zolin restriction was directly related to the summons; it concerned what the IRS could do with the information gathered as a result of the summons enforcement. See 809 F.2d at 1416. (Furthermore, the restriction itself was rooted in existing law respecting the obligation of the IRS to keep tax information confidential. Seeid.) In contrast, the restriction at issue here does not relate directly to the summons or the circumstances of compliance, but rather to an independent aspect of the Abrahams investigation