**In re John DOE I, Witness before the Grand Jury.**

**No. GJ 95–1.**

United States District Court,
D. Arizona.

March 14, 1996.

Michael J. Davidson, Asst. U.S. Atty., Phoenix, AZ.

Joseph Covington, Jenner & Covington, Washington, DC.

### ORDER

(Under Seal)

BROOMFIELD, Chief Judge.

The government is presently conducting a criminal investigation of John Doe II. As part of this investigation, it has subpoenaed U.S. Air Force Captain John Doe I to appear before a Grand Jury convened here in Phoenix, Arizona. It wants John Doe I, an attorney admitted to the Oklahoma Bar, to testify

about certain conversations he had with John Doe II. John Doe I has declined to so testify because of his concerns about whether these conversations are protected by the attorney-client privilege.

The government has filed a Petition for Order to Show Cause why John Doe I should not be held in contempt for this failure to testify. In response, counsel for John Doe II has filed a Motion to Quash Subpoena and Response to Petition for Order to Show Cause. The court held an evidentiary hearing on this issue on March 11, 1996, and now rules.

## I. BACKGROUND

John Doe II was formerly an Air Force Captain assigned at Luke Air Force Base ("AFB") in Arizona. In 1995, John Doe II left the Air Force and accepted a position with Doe Corporation, a government contractor which recently received a substantial contract from Luke AFB. Before he joined Doe Corporation, John Doe II was a procurement officer involved in the awarding of this contract.

Starting in late 1994, while John Doe II was still an Air Force officer, he sought and received legal advice from John Doe I, regarding the propriety of his seeking post-government employment with government contractors. John Doe I had a number of conversations with John Doe II and provided him with two written legal opinions.[1]

The government has obtained these written legal opinions through discovery requests it made to Doe Corporation. It now requests that the court order John Doe I to testify

"concerning the information John Doe II provided him and the effect, if any, [of] such information on John Doe I's ethics opinion." (Govt's Petition at 2–3.)[2]

## II. DISCUSSION

The grand jury has the power to compel attendance and testimony of witnesses. *United States v. Mandujano*, 425 U.S. 564, 571, 96 S.Ct. 1768, 1773–74, 48 L.Ed.2d 212 (1976). However, a witness is not bound to testify before the grand jury as to information protected by the attorney-client privilege. *In re Grand Jury Subpoenas (Hirsch)*, 817 F.2d 64 (9th Cir.1987). In its Petition for Order to Show Cause, the government argues that John Doe I's testimony is not limited by this privilege because he had no attorney-client relationship with John Doe II. John Doe II disagrees.

The party asserting the attorney-client privilege must establish "(1) communications (2) made in confidence (3) by the client (4) in the course of seeking legal advice (5) from a lawyer in his capacity as such and [the privilege] applies only (6) when invoked by the client and (7) not waived." *United States v. Abrahams*, 905 F.2d 1276, 1283 (9th Cir.1990). The burden to establish the existence, applicability and nonwaiver of the attorney-client privilege rests with the individual asserting it. *Id.*

The government does not dispute that there were communications between John Doe II and John Doe I that were made in the course of John Doe II seeking legal advice. It argues, however, that John Doe II never

---

1. The evidence at the hearing on this matter established that John Doe I wrote the original draft of the ethics opinion letters that John Doe III then edited, signed, and disseminated to John Doe II.

2. Upon being contacted by the United States Attorneys Office regarding the criminal investigation of John Doe II and information he may have had relating thereto, John Doe I wrote a letter to the Oklahoma Bar Association, of which he is a member. In it, John Doe I inquired whether he would be breaching Oklahoma Rule of Professional Responsibility 1.6, which prohibits disclosure of client confidences, by divulging information about John Doe II to the government or Grand Jury. He received a short response from a

lawyer in Oklahoma's Office of General Counsel which, among other things, stated that "my opinion is not authoritative, controlling or the opinion of the Oklahoma Bar Association." (Letter dtd January 6, 1996 from John Doe IV to John Doe I, Attachment to Govt's Petition for Order to Show Cause.) The letter essentially lays out the Ethical Rules at issue and, in one sentence, states that "[w]hile 'for purposes of determining the lawyer's authority and responsibility, principles of substantive law external to those Rules determine whether a client lawyer relationship exists,' ... there is authority which suggests that an attorney should err on the side of caution in this regard." (*Id.*)

formed an attorney-client relationship with John Doe I because ethics counselors such as John Doe I represent the organization for which they work (e.g., the Air Force), rather than employees of that organization. The government cites the court to Code of Federal Regulation §§ 84.28(b)(1) and 84.31(a)(1), which provides:

> Although ethics counseling and advice are given by DoD attorneys and involve interpretation of law and regulation and rendering of legal opinion, no attorney-client or other confidential relationship is created. Communications made to an Ethics Counselor in seeking such advice are not privileged.

32 C.F.R. §§ 84.28(b), 84.31(a) (1994).

John Doe II responds that he could have reasonably believed an attorney-client relationship was formed, notwithstanding these regulations. He focuses on John Doe I stated belief that, if the regulations did not exist, an attorney-client relationship between him and John Doe II likely would have been formed under the traditional common law test for formation of an attorney-client relationship.

The fact is, however, that the regulations do exist. Those regulations clearly put John Doe II on notice that any conversations he had with John Doe I in the ethics counseling context would not be privileged. The court is convinced that John Doe II knew or should have known about these regulations. The record is replete with correspondence both to and *from* John Doe II in which these very regulations are cited. The court cannot accept that John Doe II was conversant with certain portions of the regulations, without having read the portion of these regulations explaining that his communications with Air Force lawyers on the subject were not privileged. The court also notes that John Doe III has stated by affidavit that he told John Doe II he "was looking at the situation as an Air Force attorney." In any event, even if John Doe II had not known of the regulations, case law dictates that persons affected by published regulations are charged with constructive knowledge of their contents. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384–85, 68 S.Ct. 1, 3–4, 92 L.Ed. 10 (1947).[3]

*United States v. Schaltenbrand*, 930 F.2d 1554 (11th Cir.), *cert. denied*, 502 U.S. 1005, 112 S.Ct. 640, 116 L.Ed.2d 658 (1991), the primary case upon which John Doe II relies, does not compel a contrary conclusion. In that case, it was far less clear whether the Air Force lawyer was providing defendant Shaltenbrand privileged legal assistance or unprivileged ethics counseling. Shaltenbrand filled out a Legal Assistance Record card "which described him as a client and described the attorneys as his lawyers." *Id.* at 1562. There is no evidence in this case that John Doe II filled out such a card; indeed, it is to the contrary. Equally important, *Schaltenbrand* was decided before the Joint Ethics Regulations that publicly codified the no privilege rule and provided John Doe II with notice that his conversations with John Doe I were not privileged.

The court is also not persuaded that John Doe II's conversations with John Doe I are privileged because the regulations on their face only apply to the designated Ethics Counselor. From the record there is no dispute that John Doe I worked under John Doe III in dispensing legal advice to John Doe II. The court sees no reason why the regulations providing John Doe II with notice that his conversations with an Ethics Counselor were not privileged would not also put him on notice that his conversations on ethics matters with John Doe I were equally unprivileged.

In sum, the court finds that John Doe II has not met his burden of showing that he reasonably believed his communications with John Doe I were privileged. He did not testify even as to his subjective belief that the communications were privileged. Moreover, 32 C.F.R. §§ 84.28(b)(1) and 84.31(a)(1) provided, or should have provided, John Doe

---

**3.** John Doe II should not be surprised that his conversations with John Doe I are not privileged. The evidence established that John Doe II was an experienced Air Force officer who had interacted with John Doe I in his official capacity on numerous occasions.

II with notice that his conversations would not be privileged.[4]

Although the government seeks as its remedy to hold John Doe I in contempt the court is persuaded that John Doe I is simply awaiting this court's determination as to whether he must testify before the grand jury. The court will direct that he so testify. It will retain jurisdiction to enforce its orders whether by contempt or otherwise.

IT IS ORDERED granting the government's Petition for Order to Show Cause.

IT IS FURTHER ORDERED directing John Doe I to testify before the Grand Jury.

IT IS FURTHER ORDERED denying John Doe II's Motion to Quash Subpoena.

---

**4.** Because the court reaches this result, it need not consider the government's alternative waiver argument.