**LEXINGTON PUBLIC LIBRARY,**
Appellant,

v.

**Thomas L. CLARK, Judge, Fayette Circuit Court, Appellee,**

and

**Diana Koonce (Real Party in Interest), Appellee.**

No. 2001–SC–0531–MR.

Supreme Court of Kentucky.

Nov. 21, 2002.

Richard G. Griffith, Jeffrey J. Chapuran, Stites & Harbison, Lexington, Counsel for Appellant.

Thomas L. Clark, Lexington, pro se, Counsel for Appellee Thomas L. Clark, Judge, Fayette Circuit Court.

Robert L. Abell, Lexington, Counsel for Real Party in Interest Appellee Diana Koonce.

Opinion of the Court by Justice COOPER.

The issues raised by this appeal from a denial of a petition for a writ of prohibition concern (1) the application of the lawyer-client privilege to communications made by employees of a client that is a "corporation, association, or other organization or entity," KRE 503(a)(1); and (2) the extent of proof required either to successfully challenge a trial court's KRE 104(a) ruling by way of a petition for a writ of mandamus or prohibition, or to support a *de novo* determination that the communications fall within the lawyer-client privilege.

The underlying action was brought by Diana Koonce against her former employer, Lexington Public Library, alleging unlawful retaliation and constructive discharge. Koonce claims the library unlawfully retaliated against her because she filed a complaint against her supervisor, Bob Patrick, and that, in December 1999, she was constructively discharged by Patrick and another library manager. During the course of discovery, Koonce learned that Patrick had terminated his employment as marketing director of the library in September 2000. Pursuant to CR 30.02(6), Koonce noticed the library to produce an agent or officer to testify as to "all of the facts, circumstances and events leading up to, contributing to and relevant to the termination of Bob Patrick's employment with defendant." Koonce further requested that the agent or officer produce "all documents referred to or relied upon by the deponent for his other testimony on the above-stated points" and "all documents relating to the termination of Bob Patrick's employment with defendant, including any reports, complaints and other documents."

As to the latter request, the library sought a protective order against discovery of fourteen documents that it claimed were privileged under KRE 503(b). CR 26.03. Following an *in camera* review of those documents, Fayette Circuit Court Judge Thomas L. Clark entered an order finding that one of the documents was privileged but that the remaining thirteen had been generated for business purposes, not legal purposes. He issued a protective order with respect to the privileged document and held that the remaining thirteen were subject to discovery by Koonce. He further ordered that all of the documents be filed and sealed in the circuit court record. The library then petitioned the Court of Appeals for a writ of prohibition with respect to the documents that had been de-termined not privileged. The petition was denied and the library now appeals to this Court as a matter of right. Ky. Const. § 115. Only twelve of the original fourteen documents remain at issue. No writ was sought, of course, with respect to the document Judge Clark held was privileged, and the library now concedes that another of the original fourteen documents is not privileged.

A petition for an extraordinary writ is a separate civil action brought pursuant to CR 81, not an interlocutory appeal from the underlying action brought pursuant to CR 73.01(2). Thus, the record in the underlying action is not forwarded by the local circuit court clerk to the court in which the petition is filed and the only evidence available for consideration is that filed by the parties either in support of or in opposition to the petition. None of the documents reviewed by Judge Clark have been filed in this record. Nor does Judge Clark's order describe the documents or recite any factual bases for his conclusion that thirteen of the documents were generated for business, not legal, purposes. The only source of information available to us with respect to the contents of the documents is the affidavit of Susan Brothers, the library's assistant director for training and human resources, which describes the nature of the documents in question but not their contents. The affidavit also gratuitously states that the documents were generated for legal, not business, purposes, in direct contradiction of Judge Clark's KRE 104(a) findings. Judge Clark's order was entered on February 9, 2001. Brothers' affidavit was executed thereafter on March 13, 2001. Thus, we have no way of knowing whether the only evidence available to us was also available to Judge Clark during his examination of the documents at issue.

According to the affidavit, Brothers contacted one of the library's attorneys in July 2000 about her "increasing concerns surrounding Patrick's behavior and performance." The affidavit also states that the library was "particularly concerned about its possible legal exposure should it take any action adverse to Patrick because he was over the age of forty (40) and was experiencing health problems," and that the attorney "suggested that Geneva Pullen [not further identified (hereinafter "nfi")] and I solicit comments and concerns about Patrick from Patrick's co-workers so that we could evaluate Patrick's performance." The affidavit then describes the general nature of each document as follows:

(1) E-mail from Becky Croft (nfi) to Susan Brothers and Geneva Pullen, dated July 21, 2000, regarding Patrick's performance.

(2) Memorandum from Peggy McAllister (nfi) to Geneva Pullen, dated July 21, 2000, concerning Patrick's performance.

(3) Memorandum from Joyce Probus, Technical Marketing Assistant, to Geneva Pullen, dated July 21, 2000, concerning management issues surrounding Patrick.

(4) Handwritten chronology of events on July 20, 2000, prepared by Geneva Pullen.

(5) Memorandum from Doug Tattershall (nfi) to Geneva Pullen, dated July 24, 2000, concerning Patrick's performance.

(6) Memorandum from Penny Reeves, Foundation Executive Director, to Susan Brothers, dated July 22, 2000, regarding Patrick's performance.

(7) Handwritten notes of Geneva Pullen concerning Patrick's development of a marketing plan.

The affidavit states that each of these first seven documents were forwarded to the library's attorney "so that he could advise us how to handle Patrick's employment status with the Library."

(8) Memorandum from Geneva Pullen and Susan Brothers to Patrick, dated July 28, 2000, concerning performance and behavior issues. "This memorandum was drafted with the help of the Library's attorney after he reviewed the written documentation from Patrick's co-workers."

(9) Handwritten notes of Brothers, dated August 29, 2000, documenting a telephone conversation with Patrick concerning a timetable for Patrick's response to the July 28, 2000 memorandum. [The library now concedes that this document is not privileged.]

(10) Memorandum from Bob Patrick, Marketing Manager, to Geneva Pullen and Susan Brothers, dated August 31, 2000, responding to issues surrounding his behavior and performance. "This memorandum was immediately forwarded to the Library's attorney in order to seek his advice about how handle [sic] Patrick's employment status."

(11) Internal investigation interview notes of Susan Brothers including notes of phone conversation with the library's counsel. "These notes document my discussions and interviews with Patrick's co-workers. I interviewed the co-workers at the request of the Library's attorney and forwarded these notes to our attorney so that he could advise us how to handle Patrick's employment status with the Library."

(12) Handwritten notes of Susan Brothers documenting a telephone conversation with the Library's attorney. "The notes reflect legal advice provided by our attorney concerning how to handle our investigation and identify specific legal concerns surrounding Patrick."

(13) E-mail to Ron Steensland (nfi) and Geneva Pullen from Susan Brothers concerning Patrick's performance, including discussion of recommendation of Library's counsel. [This is the only document that Judge Clark found to be privileged.]

(14) Handwritten notes of Susan Brothers documenting a telephone conversation with the library's attorney and a meeting with Bob Patrick on August 30, 2000. "The notes reflect specific advice provided by the library's attorney concerning what to say to Patrick during the meeting."

Without revealing the actual contents of any of the documents, Judge Clark found that only document number thirteen was privileged. His order of February 9, 2001, states, *inter alia:*

> The Court finds the documents may lead to relevant information and are appropriate for discovery and are not subject to the attorney-client privilege. It appears from the record the documents in question were prepared either in the normal course of business or a part of an internal investigation by the Defendant. Though counsel may have been consulted regarding the manner in which to conduct the investigation the documents in question do not purport to give legal advice or reveal any confidential communication between the client and counsel, except for the document excluded herein.

## I. LAWYER–CLIENT PRIVILEGE.

KRE 503 provides in pertinent part as follows:

(a) Definitions. As used in this rule:

(1) "Client" means a person, including a public officer, corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from the lawyer.

(2) "Representative of the client" means:

(A) A person having authority to obtain professional legal services or to act on advice thereby rendered on behalf of the client; or

(B) *Any employee or representative of the client who makes or receives a confidential communication:*

(i) *In the course and scope of his or her employment;*

(ii) *Concerning the subject matter of his or her employment;* and

(iii) *To effectuate legal representation for the client.*

. . .

(5) A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

(b) General rule of privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing *a confidential communication made for the purpose of facilitating the rendition of professional legal services* to the client:

(1) Between the client or a representative of the client and the client's lawyer or a representative of the lawyer;

(2) Between the lawyer and a representative of the lawyer;

(3) By the client or a representative of the client or the client's lawyer or a representative of the lawyer representing another party in a pend-

ing action and concerning a matter of common interest therein;

(4) *Between representatives of the client* or between the client and a representative of the client; or

(5) Among lawyers and their representatives representing the same client.

. . .

(Emphasis added.)

Except for subsection (a)(2), which defines "representative of the client," KRE 503 is largely identical to the proposed federal rule, FRE 503, that was drafted by the Judicial Conference Advisory Committee on Rules of Evidence and submitted by the Chief Justice to Congress in 1972. Congress rejected all of the proposed privilege rules, including proposed FRE 503, when it adopted the Federal Rules of Evidence in 1975. Instead, it chose to leave this area of federal law for development under common law principles. FRE 501; *see Stidham v. Clark*, Ky., 74 S.W.3d 719, 723 n. 3 (2002). Unlike KRE 503(a)(2), the proposed federal rule did not include a definition of "representative of the client," but intended to leave that issue open for common law development. FRE 503(a)(2), Advisory Committee's Note, 56 F.R.D. 183, 237 (1972). The definition of "representative of the client" in KRE 503(a)(2) was intended to embody the principles enunciated in *Upjohn v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Commentary to proposed KRE 503(a)(2), Evidence Rules Study Commission, Final Draft (November 1989).

 *Upjohn, supra*, rejected the so-called "control group" definition of "representative of the client," *i.e.*, that the privilege applies only to communications made by an employee in a position to control or to take a substantial part in the decision about any action the corporation may take upon the advice of the attorney. 449 U.S.

at 390–97, 101 S.Ct. at 683–86. Instead, *Upjohn* held that the privilege also applied to communications made by noncontrol group employees of the client (1) at the direction of their superiors; (2) in order to secure legal advice for the corporation; (3) about matters within the scope of the employees' corporate duties; and (4) while the employees were aware that they were being questioned in order that the corporation could obtain legal advice. *Id.* at 394, 101 S.Ct. at 685. *See also Admiral Ins. Co. v. United States Dist. Court for the Dist. of Ariz.*, 881 F.2d 1486, 1492 (9th Cir.1989); Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 5.10, at 247 (3d ed. Michie 1993). Although the employees at issue in *Upjohn* were questioned personally by the attorney, KRE 503(b)(4) clarifies that such is not a requirement for application of the privilege if the other *Upjohn* requirements are satisfied. Thus, each communication made to Brothers by another employee and forwarded to the library's attorney is treated the same as if the communication had been made directly by the employee to the attorney. If the communication would have been privileged if made to the attorney, it is no less privileged because it was made to Brothers who forwarded it to the attorney. However, if the communication would not have been privileged if made to the attorney, it did not become privileged just because it was subsequently forwarded to the attorney. *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 403 (8th Cir.1987). Whether a particular communication is privileged depends (absent waiver) not on what use was ultimately made of the communication, but on the facts and circumstances under which the communication was made.

 Koonce does not question that most of the twelve communications at issue were generated at the instigation of Broth-

ers and that she was a superior of the other employees (though one might suspect otherwise with respect to document number six generated by Penny Reeves, Foundation Executive Director). Koonce instead argues that, as found by Judge Clark, the communications were made for business reasons, not legal reasons. The privilege "protects only those disclosures necessary to obtain legal advice which might not have been made absent the privilege," *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976), and "is triggered only by a client's request for legal, as contrasted with business, advice." *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1037 (2d Cir.1984). "Where the attorney acts merely as a ... business adviser ... the privilege is inapplicable." *United States v. Horvath*, 731 F.2d 557, 561 (8th Cir.1984), *citing Colton v. United States*, 306 F.2d 633, 638 (2d Cir.1962). Thus, "business documents sent to ... the corporation's attorneys, do not become privileged automatically." *Simon, supra*, at 403. On the other hand, "[c]lient communications intended to keep the attorney apprised of business matters may be privileged if they embody an implied request for legal advice based thereon." *Id.* at 404 (quotation omitted). Finally, "[w]hen the ultimate corporate decision is based on both a business policy and a legal evaluation, the business aspects of the decision are not protected simply because legal considerations are also involved." *Hardy v. New York News, Inc.*, 114 F.R.D. 633, 643–44 (S.D.N.Y.1987), *citing SCM v. Xerox*, 70 F.R.D. 508, 517 (D.Conn.1976).

■ Koonce also asserts that many of the communications at issue were made outside the scope of the corporate duties of the employees who made them, *i.e.*, that it was not within the employment duties of Becky Croft, Peggy McAllister or Doug Tattershall to observe and evaluate the job performance of Bob Patrick. The library responds that if those persons worked under Brothers' supervision, their employment duties included whatever duties were assigned to them by Brothers, including reporting on their observations and evaluations of Patrick's job performance. A duty to report, however, is different from a duty to observe and evaluate. Illustrative of the issue is the example cited by the drafters of KRE 503(a)(2)(B)(ii):

> Suppose, in a suit for personal injuries sustained when the client's truck entering the client's loading yard struck a pedestrian, the lawyer for the client interviews the driver of the truck and a secretary who happened to be looking out the window when the accident occurred. The interview with the driver would be privileged but not so the interview with the secretary because the accident was not a matter within the course and scope of her employment.

Commentary to proposed KRE 503(a)(2), Evidence Rules Study Committee, Final Draft (November 1989). The secretary had a duty to report what she had observed, but the subject matter of her report was not privileged because, at the time she observed what she ultimately reported, she did not have a duty to observe it. Likewise, Croft, McAllister and Tattershall had a duty to report what they had observed about Patrick's job performance, but the subject matter of their reports is not privileged unless, at the time they observed what they ultimately reported, they had a duty to make that observation.[1] The record before us does not contain that information.

---

1. If Brothers had directed the employees to observe Patrick's performance and then report what they observed, they would have been under a duty to both observe and report.

The record is also silent as to whether any of the persons, except Brothers and Pullen, who made the communications now claimed to be privileged, knew at the time the communications were made that they were being made for the purpose of obtaining legal advice as opposed to, *e.g.*, furnishing information to Brothers to be used in determining whether to terminate Patrick's employment. Compare this record with the facts recited in *Upjohn, supra:*

> The questionnaire identified Thomas [the attorney who interviewed the employees] as "the company's General Counsel" and referred in its opening sentence to the possible illegality of payments such as the ones on which information was sought.... A statement of policy accompanying the questionnaire clearly indicated the legal implications of the investigation. The policy statement was issued "in order that there be no uncertainty in the future as to the policy with respect to the practices which are the subject of this investigation." ... [E]ven those interviewees not receiving a questionnaire were aware of the legal implications of the interviews.

449 U.S. at 394–95, 101 S.Ct. at 685.

Similarly, in *Admiral Insurance Co., supra:*

> Gardner and Kinney [employees] were aware that the purpose of the interviews was to enable Streich, Lang [attorneys] to provide legal advice to Admiral concerning its potential liability in the JNC matter.

881 F.2d at 1493.

▆▆▆ Finally, neither the July 28, 2000, memorandum from Pullen and Brothers to Patrick about his job performance nor the August 31, 2000, memorandum from Patrick to Pullen and Brothers in response thereto can be considered privileged. Patrick was not a "representative of the client" because, as the target of the investigation and potential adverse litigant, he was not in a position to make any communications "to effectuate legal representation for the client." KRE 503(a)(2)(B)(iii). Thus, even if the July 28, 2000, memorandum was drafted with the assistance of the library's attorney, and even if it was based partially on privileged information, any privilege was waived when the information was voluntarily disclosed to Patrick. "[C]ommunications that occur in confidence lose their confidentiality (and the protection of the privilege) if the client voluntarily discloses them to third persons." Lawson, *supra*, § 5.10, at 236 *citing, inter alia, Hawkins v. Stables*, 148 F.3d 379, 384 n. 4 (4th Cir.1998) (implied waiver occurs when client discloses confidential communications to anyone not covered by the privilege) and *In re Sealed Case*, 877 F.2d 976, 980 (1989) (privilege lost even if the disclosure is inadvertent). And, of course, Patrick's response was not privileged because he was not a "representative of the client." That reduces to ten the number of communications at issue in this case that could possibly be considered privileged.

## II. SUFFICIENCY OF THE EVIDENCE.

▆▆▆ A writ of prohibition may be granted only upon a showing that:

> 1) the lower court is proceeding or is about to proceed outside its jurisdiction and there is no adequate remedy by

---

However, it appears from Brothers' affidavit that the employees were only directed to report what they had already observed. The distinction is that in the former instance, the observations were made for the purpose of making a communication and in the latter instance they were not.

appeal, or 2) the lower court is about to act incorrectly, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury would result.

*Southeastern United Medigroup, Inc. v. Hughes,* Ky., 952 S.W.2d 195, 199 (1997). *See also Kentucky Labor Cabinet v. Graham,* Ky. 43 S.W.3d 247, 251 (2001). Here, the library asserts that the lower court has acted incorrectly, although within its jurisdiction.[2]

Where a petition for one of the extraordinary writs alleges that a lower adjudicatory body within its jurisdiction has acted incorrectly, and the threshold factors of inadequate remedy and irreparable injury are satisfied, the writ should be granted only upon a showing that the challenged action reflects an abuse of discretion. If the legitimacy of the challenged action presents only a question of law, the reviewing court may of course determine the law without necessary deference to the lower court or hearing officer. Where the challenge involves matters of fact, or application of law to facts, however, an abuse of discretion should be found only where the factual underpinning for application of an articulated legal rule is so wanting as to equal, in reality, a distortion of the legal rule. Application of any lesser standard for interlocutory intervention would ignore the extraordinary nature of the writs of prohibition and mandamus.

*Southeastern United Medigroup, supra,* at 199–200.

■ Because the assertion of the lawyer-client privilege represents a mixed question of law and fact, the issue is often reviewed *de novo. Reed v. Baxter,* 134 F.3d 351, 355 (6th Cir.1998). Either way, however, the burden of proof is on the party seeking the writ to produce sufficient evidence to prove either that the trial judge abused his discretion, *Garner v. Shouse,* 288 Ky. 756, 157 S.W.2d 288, 289 (1941), or, if reviewed *de novo,* all of the requirements necessary to support a finding that each document falls within the lawyer-client privilege. *Hawkins v. Stables, supra,* at 381 (burden of proof is on the proponent of the privilege); *United States v. Construction Prods. Research, Inc.,* 73 F.3d 464, 473 (2d Cir.1996) ("If the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege his claim will be rejected.") (quotation omitted); *United States v. Abrahams,* 905 F.2d 1276, 1283 (9th Cir.1990) (proponent has the burden of establishing all of the conditions necessary for application of the privilege), *overruled on other grounds by United States v. Jose,* 131 F.3d 1325, 1329 (9th Cir.1997); *cf. Stidham v. Clark,* Ky., 74 S.W.3d 719, 725 (2002) ("Because privileges operate to exclude relevant evidence, the party asserting the privilege has the burden to prove the privilege applies.") (quotation omitted).

■ We do not know what evidence, if any, other than the documents themselves, was considered by Judge Clark in making his KRE 104(a) determination as to whether any or all of the communications at issue were made for the purpose of obtaining business advice rather than legal advice. Nor do we have access to the doc-

---

**2.** We need not determine if "there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury would result," because the Court of Appeals made that determination when it addressed the merits of the case and its determination in that regard was not an abuse of discretion. *Cf. St. Clair v. Roark,* 10 S.W.3d 482, 485 (1999).

uments, themselves, or to sufficient descriptions of their contents to properly evaluate whether Judge Clark's determination that they were not privileged was an abuse of discretion. For the same reason, we are unable to determine by *de novo* review whether any of the communications fall within the lawyer-client privilege. We know only that communications numbers one through seven were solicited by Brothers for the purpose of obtaining advice from the library's attorney as to how to handle Patrick's employment status, a purpose that could be construed as either business or legal. Further, except for Brothers and Pullen, the record is silent as to whether any of the communications concerned matters within the scope of the corporate duties of the persons who made them or whether, at the time the communications were made, the persons who made them were aware that the communications were being elicited to effectuate legal, as opposed to business, advice. We do know that any possible privileged communications were waived to the extent their contents were revealed to Patrick in the July 28, 2000, memorandum—but again, the contents of that memorandum have not been presented to us for review. Although Brothers' affidavit states that some of the communications claimed to be privileged were incorporated in the memorandum, we cannot determine as to which

communications the privilege was thereby waived. In sum, the record before us is insufficient to permit a determination whether any or all of the remaining ten communications still at issue are subject to the lawyer-client privilege.

Accordingly, the order of the Court of Appeals denying the library's petition for a writ of prohibition is affirmed.

LAMBERT, C.J.; GRAVES, JOHNSTONE, KELLER, and STUMBO, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion.

WINTERSHEIMER, Justice, dissenting.

I would reverse the Court of Appeals and remand to the Circuit Judge to impose the appropriate protective order. The attorney-client privilege protects the giving of information to the lawyer to enable him to give sound and informed advice. *See Upjohn v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).