**Jesse C. GILBERT, Appellant,**

v.

**Honorable Judith E. McDONALD–BURKMAN, Judge, Jefferson Circuit Court and Commonwealth of Kentucky; and Cecil E. New, II (Real Parties in Interest), Appellees.**

No. 2010–SC–000035–MR.

Supreme Court of Kentucky.

Aug. 26, 2010.

80

Charles E. Ricketts, Jr., Jonathan S. Ricketts, Ricketts Law Offices, PLLC, Louisville, KY, for appellant.

Judith E. McDonald–Burkman, Jefferson Circuit Judge, Louisville, KY, appellee.

Jack Conway, Attorney General, Raymond David Stengel, Commonwealth Attorney, Jonathan R. Heck, Assistant Commonwealth Attorney, Louisville, KY, for Real Party in Interest, Commonwealth of Kentucky.

Brian Jay Lambert, James David Niehaus, Deputy Appellate Defender, Office of the Louisville Metro Public Defender, Angela Marie Rea, Louisville Metro Public Defender, Louisville, KY, for Real Party in Interest, Cecil E. New, II.

Opinion of the Court by Justice NOBLE.

Appellant, Jesse C. Gilbert, appeals a decision of the Court of Appeals denying his petition for a writ of mandamus. Appellant sought the writ to force a circuit court judge to allow him access to a sealed discovery file in another criminal case. The Court of Appeals denied the writ because Appellant had failed to show why he was entitled to the material. The Court of Appeals is affirmed.

## I. Background

In September 2007, Appellant was indicted for murder, complicity to first-degree robbery, complicity to first-degree burglary, and several other charges. The charges all stem from a series of events on July 1, 2007, that led to the death of Dennis Kellems. The Commonwealth is seeking the death penalty against Appellant. The case was assigned to Judge Frederick Cowan's division of the Jefferson Circuit Court.

In December 2007, another man, Cecil New, was indicted on several offenses, including murder and kidnapping, for events that led to the death of a four-year-old child. His case was assigned to Judge Judith McDonald–Burkman's division of the Jefferson Circuit Court. The allegations against New are seemingly unrelated to those against Appellant. As the case against New proceeded, the Commonwealth filed approximately 3,000 pages of written discovery in the trial court record, as required by Jefferson Circuit Court Local Rule 803(6).

In January 2008, New moved the trial court to seal all discovery that had been filed in the record. He argued that the public release of the discovery would taint potential jurors and thus deprive him of a fair trial. The Louisville Courier–Journal, a local newspaper, intervened to oppose New's motion. The circuit court ultimately ordered that the discovery be sealed until further order of the court.

In March 2008, the Courier–Journal sought a writ of prohibition or mandamus to unseal the discovery file, arguing that its First Amendment rights would be harmed otherwise. The Court of Appeals denied the writ, and this Court affirmed that decision. See Courier–Journal, Inc. v. McDonald–Burkman, 298 S.W.3d 846 (Ky.2009).

As it turned out, Appellant and New were acquainted with one another, having been neighbors. As revealed in the discovery in Appellant's case, the two men had intermittent contact with each other while living in the same apartment building. And according to Appellant, the police questioned him regarding the murder with which New was charged. He also claims that the police threatened to charge him with that crime.

In July 2008, while the Courier–Journal's writ action proceeded at the Court of Appeals, one of the prosecutors in New's case approached Appellant's counsel about the connection between the two men. According to Appellant's counsel, the prosecutor was interested in talking to Appellant again and suggested that just as New's name showed up in the discovery in Appellant's case, Appellant's name might be mentioned in New's discovery file. The prosecutor did not indicate how or why Appellant's name might appear in the file in New's case.

At this point, it is still unclear what, if any, information related to Appellant is in New's file. However, based on Appellant's claims to Judge McDonald–Burkman, the information appears to relate to the police's questioning of him about the disappearance of New's alleged child victim. Appellant claimed that this questioning

showed he had direct information about the case against New and that the discovery would show he was not responsible for the murder of Dennis Kellems.

Appellant's counsel sought access to the discovery in New's case by way of an agreed order, but New's counsel objected. In a letter to Appellant's counsel, New's counsel stated that "only a few of the nearly three-thousand (3000) pages of material ... has any relevance at all to Mr. Gilbert's statement." He wrote that the material in question related to "an alleged statement" by Appellant and thus "[i]t would seem that if Mr. Gilbert had any knowledge of the events he would not need to review Mr. New's entire case file in order to recall what it is he knows."

Appellant, as a real party in interest in New's case, then moved the circuit court for access to the entire sealed discovery record. New's counsel objected, arguing that Appellant sought to review the discovery only so that he could then make a statement, based on the contents of the discovery, that would incriminate New in the murder for which Appellant is charged. The clear implication from New's counsel is that Appellant seeks to manufacture claims about New, but that he cannot do so convincingly and without obvious contradiction until he can be sure of what evidence the Commonwealth already possesses. Judge McDonald–Burkman denied Appellant's motion, stating in her order:

> The Commonwealth has filed discovery in Gilbert's case and has an obligation to provide any and all exculpatory evidence. The Commonwealth has indicated that there is no information in New's case which is discoverable by Gilbert or which provides exculpation. RCr 7.24 requires Gilbert [to] show that the items he seeks to review may be material to the preparation of his defense and that the request is reasonable. Gilbert has

not made such a showing to this Court; he can only speculate that there is some information which may assist his own defense in his own case. Further the request is not reasonable. The Commonwealth in Gilbert's case has the same discovery obligation as it does in this matter.

Rather than pursuing discovery in his own case before Judge Cowan—such as by making a showing that the Commonwealth actually had any exculpatory evidence—Appellant sought a writ of mandamus against Judge McDonald–Burkman related to New's case. Specifically, Appellant asked the Court of Appeals to require Judge McDonald–Burkman to grant him access to the entire sealed discovery in the circuit court's file.

The Court of Appeals denied the writ, holding that Appellant had not shown that Judge McDonald–Burkman was acting erroneously. The court noted that nothing in RCr 7.24 would entitle a defendant to inspect *everything* the Commonwealth has relating to a criminal case; rather, it entitled him only to information that is material to the preparation of his defense. As for the possibility that the file contained exculpatory evidence, the court noted that the prosecution had a continuing duty to provide Appellant with such evidence and that the circuit court had found that New's file contained nothing exculpatory. Finally, the court noted that Appellant's claims about the contents of the sealed record were mere speculation, which was insufficient to justify relief by writ.

Appellant appeals to this Court as a matter of right. Ky. Const. § 115.

## II.  Analysis

Appellant asks this Court to reverse the Court of Appeals and order that a writ of mandamus be issued against the circuit court. He also complains that the Court

of Appeals improperly disregarded his motion to stay the writ proceedings.

## A. Writ of Mandamus Standard

■ As is usually the case when dealing with one of the extraordinary writs, the best place to begin is with the test for availability of a writ. The writs of prohibition and mandamus are extraordinary in nature, and the courts of this Commonwealth "have always been cautious and conservative both in entertaining petitions for and in granting such relief." *Bender v. Eaton*, 343 S.W.2d 799, 800 (Ky.1961). Because of these concerns, this Court allows such writs only in limited and extreme circumstances.

■ To this end, the Court has articulated a strict standard to determine whether the remedy of a writ is even available to a petitioner, before examining the merits of the underlying claim. That standard, which essentially breaks writs down into two distinct classes, is as follows:

> A writ of prohibition *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

*Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004). In *Hoskins*, the Court returned to the more stringent writ standard applied in older cases, specifically *Bender v. Eaton* and *Chamblee v. Rose*, 249 S.W.2d 775 (Ky.1952), from which it had departed in the preceding two decades. *Hoskins* was an express attempt to reset the law of writs by removing the inconsistencies that had crept into various cases. The *Hoskins*

test applies both to writs of prohibition and mandamus. *See Cox v. Braden*, 266 S.W.3d 792, 795 (Ky.2008); *Hodge v. Coleman*, 244 S.W.3d 102, 109 (Ky.2008); *Sowders v. Lewis*, 241 S.W.3d 319, 322 (Ky. 2007).

## B. The Standard Applied

Appellant does not dispute that the lower court has jurisdiction, but instead argues that it is acting erroneously. To this extent, he proceeds under the second class of writs articulated in *Hoskins*. Thus, in order for the writ to be available, Appellant must show both that "there exists no adequate remedy by appeal or otherwise" and that "great injustice and irreparable injury will result if the petition is not granted." *Hoskins*, 150 S.W.3d at 10. He has failed to show either of these requirements.

### 1. Appellant's Misinterpretation of *Hoskins*

Appellant first argues, as though implicitly recognizing that he cannot meet either requirement, that *Hoskins* was an attempt to increase a court's discretion as to whether to grant a writ and that judicial economy, especially where constitutional rights are involved, is a sufficient reason to grant a writ. Under this approach, he argues, he is entitled to the writ because it would be more efficient to vindicate his constitutional rights to exculpatory evidence, to make a defense, and to due process by immediately giving him access to the sealed court record through a writ.

■ Appellant's reading of *Hoskins*, however, is incorrect because that decision did not remove any requirements from the second class of writs. That decision did depart from the standard laid out in *Southeastern United Medigroup, Inc. v. Hughes*, 952 S.W.2d 195 (Ky.1997), to re-

move the requirement of no adequate remedy by appeal in the no-jurisdiction class of writs and, in so doing, worked to expand an appellate court's discretion to grant the first class of writs. But that expansion of discretion was very limited and did not apply to the second class of writs. To the contrary, this Court expressly retained the requirement of no adequate remedy by appeal or otherwise in the second class. More importantly, this Court reaffirmed *Bender v. Eaton*, which made the requirements of the second class of writs a *prerequisite* for the mere availability of a writ. *Hoskins*, 150 S.W.3d at 10. This test requires a substantial showing, and it is specifically intended to be a hurdle to consideration of the merits of any alleged error. *Cox*, 266 S.W.3d at 795. As this Court explained,

> The writ of mandamus, like the writ of prohibition, is extraordinary in nature. Such a writ bypasses the regular appellate process and requires significant interference with the lower courts' administration of justice. The expedited nature of writ proceedings necessitates an abbreviated record. This magnifies the chance of incorrect rulings that would prematurely and improperly cut off the rights of litigants, if the process were not strictly scrutinized for appropriateness. As such, the specter of injustice always hovers over writ proceedings, which explains why courts of this Commonwealth are—and should be—loath to grant the extraordinary writs unless absolutely necessary. Because they fall outside the regular appellate process, especially when they are used as de facto interlocutory appeals (an increasing, undesired trend), writ petitions also consume valuable judicial resources, slow down the administration of justice (even when correctly entertained), and impose potentially unnecessary costs on litigants.

*Id.* Thus, Appellant is simply wrong to assert that *Hoskins* allows the second class of writs to be granted for reasons of judicial economy.

## 2. The Court of Appeals' Consideration of the Merits

Appellant also complains that "[t]he Court of Appeals made no effort to consider whether the petition had any merit; that is, whether [the lower court] had made any error." This too is incorrect.

In fact, the Court of Appeals skipped over the initial steps required by *Hoskins* and directly considered the merits. Immediately after describing the *Hoskins* test, the Court of Appeals wrote:

> In this matter, Gilbert has failed to demonstrate that he is entitled to relief by means of a writ of mandamus because *he cannot demonstrate that the Jefferson Circuit Court has acted erroneously* in denying his motion to grant him access to all of the sealed discovery in the criminal prosecution of Cecil New.

(Emphasis added.) The court went on to state that RCr 7.24 entitles a criminal defendant to inspect only those materials that "may be material to the preparation of a defense," including material exculpatory evidence. The court then noted, as the circuit court had, that the Commonwealth had filed discovery in Appellant's own case and had a continuing duty "to provide any and all material exculpatory evidence to Gilbert." The court then concluded that Appellant had failed to show that his request to review the entire discovery filed in New's case was reasonable and that he could only speculate that some of the information would assist him in his defense.

Basically, the Court of Appeals did exactly what Appellant claims it did not: it addressed the merits of his claim that the

circuit court erred, holding that he had not demonstrated an entitlement to the discovery material in question. In fact, it prematurely addressed the merits by failing to first analyze whether the writ was even available. Assuming that Appellant could not show that the writ was available under *Hoskins,* he actually received a more in-depth review than he was entitled to.

### 3. The *Hoskins* Prerequisites

This Court concludes that Appellant was not entitled to the writ because he has not satisfied either of the *Hoskins* prerequisites.

■ Appellant has failed the first requirement of showing that "there exists no adequate remedy by appeal or otherwise." *Hoskins,* 150 S.W.3d at 10. He argues that if the writ does not issue and the evidence turns out to be exculpatory, any conviction he might receive would be reversed on appeal, which would require retrial. Forcing this retrial on him, he argues, would produce the "inept" outcome criticized in *Chamblee,* 249 S.W.2d at 777, and *Hoskins,* 150 S.W.3d at 11. This argument, however, is based on an incorrect reading of both *Chamblee* and *Hoskins.* Avoiding the "inept" outcome was only used as a rationale for removing the no-remedy-by-appeal requirement from the class of jurisdictional writs. However, that requirement was kept for the second, or "mere error," class of writs. *See Appalachian Regional Healthcare, Inc. v. Coleman,* 239 S.W.3d 49, 53 (Ky.2007) (explaining in detail the distinction between the two classes and the test used for each).

In fact, such allegedly inept outcomes are expressly allowed under the second class of writs because the lack of an adequate remedy by appeal is the one requirement that is set in stone and unavoidable. *See Bender,* 343 S.W.2d at 801 ("Our cases involving controversies in this second class,

where it is alleged the lower court is acting or proceeding erroneously within its jurisdiction, have consistently (apparently without exception) required the petitioner to pass the first test; i.e., he *must* show he has no adequate remedy by appeal or otherwise." (emphasis added)); *id.* (implying that requirement is an "absolute prerequisite").

Appellant argues that he nevertheless satisfies this requirement because an appeal would be inadequate to resolve his claim if the information he seeks would be merely helpful to his defense (and thus discoverable under RCr 7.24), rather than exculpatory. He argues that if he were forced to go to trial without this information and an appellate court found error in the trial court's failure to allow the discovery, it would likely be considered harmless. Thus, he claims, an appeal would be an inadequate tool to vindicate his right to the information. Yet, "[w]e have consistently found the right of appeal to be an adequate remedy when the petition of a criminal defendant seeks only to correct procedural or trial errors." *Hoskins,* 150 S.W.3d at 19. If the information is merely helpful but not exculpatory, then the error would be exactly that: a procedural or trial error. That such an error *might* be found harmless does not render an appeal an inadequate remedy and is not grounds for granting a writ. And should the information actually turn out to be exculpatory, an appeal would adequately vindicate his constitutional right to the information.

■ That Appellant has an adequate remedy by appeal is alone sufficient grounds to deny him the writ he seeks. However, this Court notes that he has also failed to show the second requirement that "great injustice and irreparable injury will result if the petition is not granted." *Id.*

at 10.[1] Appellant argues that being forced to go through a trial without all of the available evidence is itself a great injustice. This might be the case if he could affirmatively show that the Commonwealth is withholding exculpatory evidence from him, but as the circuit court and Court of Appeals have explained, Appellant has not made such a showing. At most, he makes conclusory claims that the information *might* be useful to his defense or *might* be exculpatory without any explanation of how. This sort of raw speculation is woefully insufficient to show ruinous injury.

Indeed, the lack of ruinous injury is clear because Appellant has other, more direct ways to get the information. Appellant does not have to get the information directly from New's sealed file or even through an order from the circuit judge in New's case. Instead, the information—if it is exculpatory or even material to his defense—can come directly from the Commonwealth, which has presumably retained copies (or perhaps the originals) of everything that was filed in New's case. The circuit court's seal order applies only to the court's file, not to the information or evidence (or copies of information or evidence) actually in the Commonwealth's possession.

If any of that information is exculpatory, the Commonwealth, as noted by the trial court and the Court of Appeals, has a continuing duty to turn it over to Appellant. No court order is necessary. At this point, however, Appellant has not made a showing that the information might be exculpatory.

Even if the information is merely "material to the preparation of the defense," RCr 7.24(2), rather than exculpatory, Ap-

pellant can still get it directly from the Commonwealth. All he has to do is show the materiality of the information and that his request is reasonable. The first showing, materiality, should be relatively easy since the information in question appears to relate to a statement that Appellant himself made to police. Surely he has some knowledge of the contents of any such statement. The second showing, reasonableness of the request, should be similarly easy. A more targeted request would likely be considered reasonable. All Appellant has to do is make the necessary showings to the circuit judge in his case, rather than the one in New's case, and he would be entitled to the information he seeks. Consequently, denying Appellant's writ would not create "great injustice and irreparable injury" because he has other, more direct ways of getting any information that could be material to his defense.

## C. The Motion to Stay Proceedings

Appellant last complains that the Court of Appeals improperly ignored his unopposed motion to stay the writ proceedings. Originally, Appellant moved the Court of Appeals to expedite its decision on his petition because his trial date was approaching. Some time after filing this motion, the prosecutor informed Appellant's counsel that he would not oppose a continuance of Appellant's trial until after the trial of Cecil New if Appellant would withdraw or seek to stay his writ petition. Acting on this agreement, Appellant asked the Court of Appeals to stay his petition and his trial was rescheduled. When the Court of Appeals entered its order denying the writ petition, it also denied the motion to stay as moot.

---

1. Appellant does not claim that he meets the "certain special cases" exception to the injury requirement discussed in *Bender* and *Hoskins*. However, even if he could show that he meets the exception, the fact that he has an adequate remedy by appeal or otherwise would still prevent him from obtaining a writ, as that requirement is an absolute prerequisite.

Appellant claims this was improper but offers no explanation for why. He does explain that granting the stay would be to his advantage because if his trial is held after New's, then the discovery will no longer be under seal, thus making the writ proceedings unnecessary. If anything, this shows further that the Court of Appeals properly denied the writ since any harm that Appellant might suffer is still speculative given that, even without the writ, Appellant's trial might still occur after New's discovery file becomes unsealed. More importantly, this Court can discern no error in the Court of Appeals' treatment of Appellant's motion. The court was clearly aware of the motion and did not ignore it, having dismissed it as moot rather than leaving it in limbo. That the Court did not resolve the motion in the way most beneficial to Appellant is not "ignoring" his motion and is not error.

### III. Conclusion

For the foregoing reasons, the order of the Court of Appeals is affirmed.

All sitting. All concur.