RENDERED: AUGUST 29, 2019
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2018-SC-000651-MR

FINAL

DATE 9/23/19 JAF

UNIVERSITY OF LOUISVILLE                                      APPELLANTS
AND
RUBY D. FENTON

 

ON APPEAL FROM COURT OF APPEALS
V.             CASE NO. 2018-CA-000280-0A
JEFFERSON CIRCUIT COURT NO. 15-CI-001410

 

HONORABLE AUDRA J. ECKERLE                                      APPELLEE
JUDGE, JEFFERSON CIRCUIT COURT,
DIVISION SEVEN (7)

AND

C. WILLIAM HELM                                      REAL PARTY
IN INTEREST

**OPINION OF THE COURT BY JUSTICE BUCKINGHAM**

**AFFIRMING IN PART AND REMANDING IN PART**

The University of Louisville and Ruby Fenton appeal from an order of the

Court of Appeals denying their petition for a writ of prohibition/mandamus.

We affirm in part and remand in part.

## I. BACKGROUND

Appellee/Real Party in Interest C. William Helm (Dr. Helm) was an

Associate Professor at the University of Louisville School of Medicine's Division

of Gynecologic Oncology. In July 2009 the Promotion, Appointment, and

Tenure Committee (PAT Committee) voted to promote Dr. Helm to Professor,

and on July 18, 2009, Dr. Christine Cook (Department Chair at that time)

recommended to Dr. Edward Halperin (Dean of the School of Medicine at that time) that Dr. Helm be promoted to that position.

On October 1, 2009, Dr. Helm was suspended and placed on administrative leave based on allegations of plagiarism, for which he was later cleared, and allegations of failure to follow proper procedures for research approval. On October 14, 2009, the PAT Committee was reconvened, and it rescinded Dr. Helm's promotion.

On October 23, 2009, Dr. Helm initiated a faculty grievance procedure against two of his supervisors, Dr. Christine Cook and Dr. Lynn Parker. Appellant Ruby Fenton (Fenton) had served as an attorney for the University prior to the grievance proceedings, and she was retained to represent Dr. Cook and Dr. Parker in the grievance proceedings. Her attorney fees were paid by the University; fees for Dr. Helm's attorney were not. Under the applicable personnel rules, the University was designated as a neutral arbiter in the faculty grievance process. Thus, Dr. Cook and Dr. Parker were represented by an attorney who had an ongoing attorney-client relationship with the University, the neutral arbiter in the process.

On May 17, 2010, the University's grievance hearing panel unanimously found that Dr. Helm had been placed on leave in a manner totally contrary to the University's written policies. The panel recommended that the University comply with Dr. Helm's contract through its conclusion on July 31, 2010, and that Dr. Helm be allowed to re-submit his application for full professorship.

On June 18, 2010, Dean Halperin refused to accept the panel's recommendation that Dr. Helm be allowed to re-submit his application, stating it was moot because Dr. Helm's contract would expire on July 31, 2010. Dean Halperin had notified Dr. Helm in February of that year that his faculty appointment would not be renewed. As Dr. Helm had been advised, the University did not renew his faculty appointment, and his last day at the University was July 31, 2010.

Dr. Helm filed the underlying action against the University in 2014. His claim, filed pursuant to an amended complaint, is a whistleblower claim pursuant to KRS[1] 61.102-103.

During discovery, Dr. Helm served a subpoena upon Fenton seeking all written communications and notes reflecting communications between Fenton and any person associated with the University relating to the faculty grievance proceedings. The University and Fenton refused to produce the communications and asserted that the requested information was protected by the attorney-client privilege and the work-product privilege. *See* KRE[2] 503 (attorney-client privilege) and CR[3] 26.02(1) (work-product privilege).

In September 2016 the trial court entered an order finding the communications to be privileged. On February 15, 2018, however, the trial court reversed its original ruling and entered an order permitting the discovery

---

[1] Kentucky Revised Statutes.

[2] Kentucky Rules of Evidence.

[3] Kentucky Rules of Civil Procedure.

of all communications between Fenton and any University employee, excepting Dr. Cook and Dr. Parker who had been represented by Fenton in the grievance proceedings.

Fenton and the University filed a petition for a writ of prohibition/mandamus in the Court of Appeals, seeking to prohibit the trial judge from enforcing her order compelling the University and Fenton to provide the communications with various University employees to the real party in interest, Dr. Helm, and seeking to direct the trial judge to enter an order denying Dr. Helm's motion to compel. The Court of Appeals subsequently remanded the proceeding to the trial court for additional findings concerning the applicability of the attorney-client privilege. The trial court then made the following additional findings of fact:

> Upon remand from the Court of Appeals, the Court elucidates that the attorney-client privilege was both (a) waived pursuant to testimony and notes of Dr. Tracey Eells; and (b) non-existent between Ruby Fenton and any University employee other than Drs. Cook and Parker. The Court further notes the limited information ordered compelled, i.e., the bullet points at pp 2-3 of Helm's motion.

Based upon these additional findings of the trial court, and apparently accepting in full the trial court's findings of fact, the Court of Appeals denied the writ, stating that "[b]ased upon our review of the record, this Court cannot conclude that the trial court abused its discretion by finding that the University failed to carry its burden of demonstrating the applicability of the attorney-client privilege." This appeal by the University and Fenton followed.

4

The issues on appeal are: (1) did the trial court and the Court of Appeals err in holding that Fenton did not represent the University in the faculty grievance proceedings against Dr. Cook and Dr. Parker and that the attorney-client privilege thus was not applicable; (2) if the attorney-client privilege was applicable, did the University waive it; (3) if the answer to the first two questions is unfavorable to the University and Fenton, are the documents nonetheless protected from discovery by the work-product privilege.

## II. STANDARD OF REVIEW

The issuance of a writ is an extraordinary remedy, and we have always been cautious and conservative in granting such relief. *Grange Mut. Ins. v. Trude*, 151 S.W.3d 803, 808 (Ky. 2004). The standard for granting petitions for writs of prohibition and mandamus is the same. *Mahoney v. McDonald-Burkman*, 320 S.W.3d 75, 77 n.2 (Ky. 2010) (citing *Martin v. Admin. Office of Courts*, 107 S.W.3d 212, 214 (Ky. 2003)).

The general standards for the issuing of a writ are set forth in *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004).[4] In *Bender v. Eaton*, 343 S.W.2d 799 (Ky. 1961), the special case exception to the general rule is set forth. It provides for the granting of a writ "in the absence of a showing of specific great and irreparable injury to the petitioner, provided a substantial miscarriage of

---

[4] "A writ... may be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted."

5

justice will result if the lower court is proceeding erroneously, and correction of the error is necessary and appropriate in the interest of orderly judicial administration." *Id.* at 801. Further, in *The St. Luke Hospitals, Inc. v. Kopowski*, 160 S.W.3d 771 (Ky. 2005) (citing KRE 503), we held that the *Bender* special case exception applies to the attorney-client privilege. *Id.* at 775.

In summary, if a trial court orders the production of communications protected by the attorney-client privilege, the aggrieved party is entitled to a writ halting the production of the such communications.

Concerning the issue of the proper standard of review of the lower courts' rulings in writ cases, be it de novo, abuse of discretion, or clear error, we addressed this issue in *Trude*, 151 S.W.3d 803, as follows:

> [T]he proper standard actually depends on the class, or category, of writ case. De novo review will occur most often under the first class of writ cases, i.e., where the lower court is alleged to be acting outside its jurisdiction, because jurisdiction is generally only a question of law. De novo review would also be applicable under the few second class of cases where the alleged error invokes the "certain special cases" exception or where the error involves a question of law. But in most of the cases under the second class of writ cases, i.e., where the lower court is acting within its jurisdiction but in error, the court with which the petition for a writ is filed only reaches the decision as to issuance of the writ once it finds the existence of the "conditions precedent," i.e., no adequate remedy on appeal, and great and irreparable harm. "'If [these] procedural prerequisites for a writ are satisfied, "whether to grant or deny a petition for a writ is within the [lower] court's discretion."'"
>
> But the requirement that the court must make a factual finding of great and irreparable harm before exercising discretion as to whether to grant the writ then requires a third standard of review, i.e., clear error, in some cases. This is supported by the fact that the petition for a writ is an original action in which the court that

6

hears the petition, in this case the Court of Appeals, acts as a trial court. And findings of fact by a trial court are reviewed for clear error. Therefore, if on appeal the error is alleged to lie in the findings of fact, then the appellate court must review the findings of fact for clear error before reviewing the decision to grant or deny the petition.

151 S.W.3d at 810; see also *Collins v. Braden*, 384 S.W.3d 154, 158 (Ky. 2012).

On the specific issue concerning the standard of review in assessing whether a privilege applies, we stated in *Frankfort Regional Medical Center v. Shepherd*, 2016 WL 3376030, at *5-6 (Ky. 2016), as follows:

> We noted in *Collins v. Braden*, however, that whether a "privilege applies is a mixed question of law and fact that is 'often reviewed de novo.'" 384 S.W.3d at 161 (quoting *Lexington Public Library v. Clark*, 90 S.W.3d 53, 62 (Ky. 2002)). From this, we reasoned that "rather than deferring to the Court of Appeals [on the question of privilege], ... this Court must independently examine whether the hospital has shown at this time that the privilege applies." *Id.*
> . . . . Although the ultimate question of the existence of a privilege is reviewed *de novo*, that determination consists of, and can be broken down into, constituent parts—questions of fact, questions of law, and mixed questions of law and fact (i.e., application of the law to the facts)—with each having its own standard of review. See *Trude*, 151 S.W.3d at 810 (distinguishing between the various aspects of a decision). Any finding of fact by the trial court is entitled to deference and will not be disturbed absent clear error. *Id.* Indeed, such deference makes even more sense in a writ action than in an ordinary appeal because we are proceeding on an "abbreviated record," which "magnifies the chance of incorrect rulings." *Cox v. Braden*, 266 S.W.3d 792, 795 (Ky. 2008).
>
> Moreover, we are not reviewing the trial court's order in the strictest sense but, instead, are reviewing the Court of Appeals' action in granting or denying the writ petition, which is an original action in that court. That review has its own standards for the different aspects of the decision whether to grant the writ, but they apply to the Court of Appeals' decision, not the trial court's. *Trude*, 151 S.W.3d at 810. Because we are dealing with the second class of writs, we would ordinarily give some deference to the Court of Appeals to the extent it determined the factual question of great

7

and irreparable harm to the hospital. *Id.* But that is not really at issue in this case.

Instead, because we are addressing a question of evidentiary privilege under the special-cases exception, we review the trial court's underlying factual findings for clear error, while our review of whether the privilege applies, given the facts found by the trial court, is *de novo. Id.*

*Frankfort Regional Medical Center,* 2016 WL 3376030, at *5-*6.[5]

### III. ATTORNEY-CLIENT PRIVILEGE ISSUES

The University and Fenton contend that the lower courts erred in determining that the attorney-client privilege was not applicable under these circumstances and that even if it did exist, it had been waived by the production of Dr. Tracy Eells's notes relating to a telephone conversation between himself and Fenton.

### A. The Attorney-Client Privilege

The attorney-client privilege is codified in KRE 503. "Despite the historic and modern sanctity of the attorney-client privilege, not all communications between an attorney and a client are privileged, and the burden is on the party claiming the privilege to prove that it exists as to the communications so claimed." *St. Luke Hospitals,* 160 S.W.3d at 775 (citing *Haney v. Yates,* 40

---

[5] "We have also noted repeatedly that whether to issue the writ is ultimately in the sound discretion of the court to which the petition was submitted if that court correctly found the *Hoskins* prerequisites had been shown. *Trude,* 151 S.W.3d at 810. That decision is subject to review for abuse of discretion. Of course, the Court of Appeals concluded in this case that the hospital had not shown the existence of the privilege—in other words, that the trial court was not acting in error—and thus did not issue the writ. By resolving the case in this manner, the Court of Appeals never reached the stage where it could exercise its writ discretion. Thus, the abuse-of-discretion standard for that decision is not at issue here." *Frankfort Regional Medical Center,* 2016 WL 3376030, at *6.

8

S.W.3d 352, 355 (Ky. 2001), and *Sisters of Charity Health Sys. v. Raikes*, 984 S.W.2d 464, 469 (Ky. 1998)). The attorney-client privilege attaches to a confidential communication "made to facilitate the client in his/her legal dilemma and made between two of the four parties listed in [KRE 503]: the client, the client's representatives, the lawyer, or the lawyer's representatives." *St. Luke Hospitals*, 160 S.W.3d at 776 (citing *Haney*, 40 S.W.3d at 355, and *Lexington Public Library v. Clark*, 90 S.W.3d 53, 59 (Ky. 2002)). Furthermore, KRE 503(a)(5) states that "[a] communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication."

## B. Applicability of Privilege

Fenton's privilege log reflects that the communications at issue involve an extensive number of communications between herself and approximately 22 University employees made in connection with the grievance proceedings. The Court of Appeals initially remanded the case to the trial court for further findings concerning the attorney-client privilege. On remand the trial court simply stated that "the attorney-client privilege was both (a) waived pursuant to the testimony and notes of Dr. Tracey Eells; and (b) non-existent between Ruby Fenton and any University employee other than Drs. Cook and Parker." Despite the brevity and lack of further explanation by the trial court on remand, we conclude, as did the Court of Appeals, that the trial court had

9

determined that the only attorney-client privilege involving Fenton in the Helm's grievance matter was between her and Dr. Cook and Dr. Parker.

As we examine the record to determine if the Court of Appeals correctly determined that the findings of the trial court were not clearly erroneous, we note first the evidence that indicates there was such an attorney-client relationship between Fenton and the University and any of its employees other than Dr. Cook and Dr. Parker: 1) Fenton had represented the University for a period of time prior to the grievance proceedings, indicating an ongoing relationship; 2) The University apparently paid Fenton's legal fees in connection with the grievance proceedings; 3) Fenton claims in an affidavit that she represented the University, as well as Dr. Cook and Dr. Parker, in the grievance proceedings.

On the other hand, we note the following facts and circumstances supporting Dr. Helm's position that there was no attorney-client relationship between Fenton and the University and any of its employees other than Dr. Cook and Dr. Parker: 1) The University was not a party to the grievance proceeding; 2) Fenton represented Dr. Cook and Dr. Parker in the proceeding; 3) The nature of the proceeding (i.e., the University had the role of neutral arbiter); 4) Bossmeyer, the University's assistant legal counsel, had advised Dean Halperin and Dr. Larry Cook (University Executive Vice-President for Health Affairs at the time and husband of Dr. Christine Cook) on matters concerning the medical school and presumably was available to advise the University and its personnel in grievance proceedings in which it was not a

10

party; 5) There has been no contract produced to support the contention that Fenton represented the University in connection with the grievance proceedings.[6]

As we noted in the *Shepherd* case, the trial court's finding of fact is entitled to deference by both the Court of Appeals and this Court, and "will not be disturbed absent clear error." 2016 WL 3376030, at *5-*6 (2016). Further, we noted in that case that such deference "makes even more sense in a writ action than in an ordinary appeal because we are proceeding on an 'abbreviated record,' which 'magnifies the chance of incorrect rulings.'" *Id.*, citing *Cox v. Braden*, 266 S.W.3d 792, 795 (Ky. 2008). Considering the facts and circumstances stated above, we, like the Court of Appeals, find no clear error in the trial court's determination that Fenton represented only Dr. Cook and Dr. Parker in the Helm grievance proceedings. Similarly, those underlying findings produce the conclusion of law that there was no attorney-client relationship between Fenton and the University in relation to the Helm grievance proceedings.

## C. Waiver of Privilege

Because we conclude that the attorney-client privilege does not apply under the facts of this case, that issue is moot.

---

[6] Dr. Helm also raises two additional arguments: 1) that state law and University policy required a personal services contract between the University and Fenton, and there was none; and 2) that the "ethical issues demonstrate the folly of the claim that Fenton could represent (i) the University, the neutral and unbiased decision maker on Helm's grievance; and (ii) and Cook and Parker in the same case." Page 20 of Helm's brief. We decline to address these two arguments by Dr. Helm, and such is unnecessary to our decision in this case.

## IV. WORK-PRODUCT PRIVILEGE ISSUES

The University and Fenton claim that the subject communications are also protected by the work-product privilege as referenced in CR 26.02(1). The University and Fenton raised this issue in their writ petition to the Court of Appeals as reflected on page 15 of their Memorandum of Authorities in Support of Petition for a Writ of Prohibition/Mandamus. *See* Court of Appeals Record, pg. 23.

The Court of Appeals, however, did not rule upon the University and Fenton's request for protection of the subject communications based upon the work-product privilege. Thus, we remand to the Court of Appeals for its ruling on that issue.

## V. CONCLUSION

For the foregoing reasons, the order of the Court of Appeals denying the University and Fenton's petition for a writ of prohibition/mandamus is affirmed in part and remanded to the Court of Appeals in part for additional proceedings consistent with this opinion.

All sitting. All concur.

COUNSEL FOR APPELLANTS:

Craig Christman Dilger
Steven Clark
Stoll Keenon Ogden, PLLC

Ruby D. Fenton
Tilford Dobbins & Schmidt, PLLC


COUNSEL FOR APPELLEES:

Audra Jean Eckerle
Jefferson Circuit Court
Jefferson County Judicial Center

Michael W. Oyler
Reed Weitkamp Schell & Vice, PLLC