# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.



# Supreme Court of Kentucky

## 2019-SC-000115-I

DANIEL POPA; NECC TELECOM, INC.          APPELLANTS
(CANADA); NECC TELECOM, INC.; PULSE
TELECOM, INC. (CANADA); PULSE
TELECOM PTY, LTD), SRVR, LLC;
QUICKCALL.COM, LLC D/B/A BLUETONE
LLC; AND BLUETONE CONNECT, PTY LTD


ON REVIEW FROM COURT OF APPEALS
V.          CASE NO. 2018-CA-001053-MR
JEFFERSON CIRCUIT COURT NO. 13-CI-002337


LUCIA TIBERIA POPA; VICENT PETRESCU;          APPELLEES
SHERBAN APOSTOLINA; RAMONA CEAN;
AND RAUL TURCU


## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Daniel Popa appeals from the Court of Appeals' order denying his motion

for interlocutory relief pursuant to Kentucky Rule of Civil Procedure (CR)

65.08. Daniel[1] seeks relief from post-judgment trial court orders that he

alleges improperly impose injunctive relief. Because the trial court orders are

merely efforts to enforce the final and appealable judgment and Daniel failed to

post a supersedeas bond under CR 73.04, we affirm the Court of Appeals.

---

[1] The two primary parties share the same surname so they will be referred to in this Opinion by their first names to avoid confusion.

## FACTS AND PROCEDURAL HISTORY

Daniel Popa (Daniel) and Lucia Popa (Lucia), a married couple, operated several telecommunications businesses together. In 2010, their marriage was dissolved, and the ownership and control of the companies was divided between the two individuals. On May 3, 2013, Daniel filed a Complaint against Lucia, alleging that one of the companies she controlled was not providing his companies with the software and support they needed, contrary to a commitment she made in the parties' marital settlement.[2] Daniel named Lucia, her associates who were managing the companies, and several of the companies (Lucia and the companies), as defendants in the Jefferson Circuit Court action. The Complaint also named companies NECC US, SRVR, NECC Canada and Pulse Australia as defendants. Lucia was a 51% majority shareholder in three of the named companies.[3]

After two years of active litigation, it became clear that the only viable solution was for one party to take complete control and pay the other for his/her interests in the companies. In September 2015, nearly two and a half years after the Complaint was filed, the parties entered a 79-page Settlement

---

[2] The marital settlement agreement established that Daniel was a 49% minority shareholder in NECC US, NECC Canada, Pulse Australia and Pulse US. Daniel was a 51% majority shareholder in Pulse Canada. Lucia was a 51% majority shareholder in NECC US, NECC Canada, Pulse Australia and Pulse US, and a 49% minority shareholder of Pulse Canada. The agreement also established that Lucia would serve as CEO and director of NECC US, NECC Canada, and Pulse Australia, and serve as the CEO of Pulse Canada and sole manager of Pulse US for four years.

[3] The record is unclear as to whether Lucia was the majority shareholder in SRVR when the Complaint was filed, but as discussed below, this company was purchased from Lucia as part of a later settlement agreement so it appears she either held a majority interest in SRVR or managed the company.

2

Agreement which gave Daniel full control and ownership of the companies in exchange for making $3.58 million in payments to Lucia over roughly three years. Daniel also purchased all of Lucia's ownership interest in three additional companies — SRVR, Quickcall/Bluetone, and Bluetone Australia (the Transfer Companies). In the Settlement Agreement, Lucia warranted that the financial statements delivered to Daniel fairly and accurately represented the financial condition and operations of the Transfer Companies. Daniel initially made the $5,000 daily installment payments to Lucia that were provided for in the Settlement Agreement.

In 2016, Daniel learned that, during Lucia's ownership and exclusive control of the companies, the companies incurred approximately $8 million in unpaid tax liabilities.[4] In early 2017, Daniel stopped making payments under the Settlement Agreement and pursued new claims against Lucia. On February 16, 2017, Daniel filed a Second Amended Complaint, alleging, among other things, breach of contract, fraud, and negligent misrepresentation. Around the same time, Daniel sought to formally realign the parties, naming all companies involved in this litigation as plaintiffs, and leaving Lucia and her associates as the only defendants. Daniel asserted that since Lucia breached the representations and warranties in the Settlement Agreement, he was no

---

[4] Given the limited record on appeal, it is not entirely clear as to which company/companies had outstanding tax liabilities. While some of the companies were initially owned by Daniel, and others (the Transfer Companies) later came under his control by virtue of the Settlement Agreement, all companies will hereinafter be referred to as "the companies" because, due to the nature of this appeal, determining which specific company or group of companies is referred to is not necessary.

3

longer obligated to make the daily installment payments and sought return of the amounts he had already paid.

Over the next few months, the parties engaged in ongoing discovery efforts. Lucia filed a motion on December 8, 2017, to enjoin Daniel from transferring customers and also seeking other relief. Lucia sought court intervention based on her perception that Daniel: 1) was moving customers from one of the Transfer Companies to a business he controlled outside the court's jurisdiction; 2) was allowing the companies to essentially go insolvent; and 3) was not paying taxes to an even greater extent than when she controlled the companies. The trial court conducted a temporary injunction hearing on January 29, 2018. This hearing was conducted off the record, at Daniel's urging, based on his concerns that proprietary financial information would likely be presented and cause injury to the companies. Daniel testified first, followed by an expert appointed by the trial court to review the unpaid tax allegations and advise the court.

The expert testified that during the time Lucia was in control of the companies, the tax problems were caused by the telecommunications customer invoices, which had a line item stating what charges were for taxes and fees but the amounts reflected were not forwarded to the taxing authorities. She also stated that Daniel did not fix the problem once he took control of the companies, and that the invoices he utilized stated that all taxes were included in the customer charges, but that the companies still failed to fulfill their tax obligations.

4

Lucia was scheduled to testify after the expert, but given that all involved anticipated that her testimony would be lengthy, the trial court adjourned the hearing for the day. When the parties returned the following morning, the trial court announced that after considering the situation overnight, it would be entering an order dismissing Daniel's breach of contract claims.

In its February 2, 2018 order, the trial court made the following rulings relevant to this appeal: (1) all further proceedings must be conducted on the record;[5] (2) Daniel cannot prove that Lucia committed a material breach because Daniel has acted in a manner which proves that he does not care whether his companies have paid their taxes, meaning the payment or non-payment of taxes was not a material fact Daniel relied on in executing the Settlement Agreement; and (3) Daniel has unclean hands because he acknowledged that his businesses are not paying taxes, thereby precluding the court from relieving him of the obligation to complete his payments for the businesses based on Lucia's alleged failure to pay taxes.

On February 15, 2018, Daniel filed a Petition for Writ of Mandamus with the Court of Appeals (2018-CA-000256), seeking to prohibit the trial court from enforcing the February 2 order and to compel the trial court to disqualify Lucia's attorneys. On the same day, Daniel also filed a motion for intermediate

---

[5] In the early stages of this litigation, the parties (or at least Daniel) requested that much of the filings and discussions regarding the failure to pay taxes, a large underlying issue in the case, be kept off the record in order to avoid providing insider information to competitors and to not impair the companies' ability to resolve the problem. Unfortunately, the trial court obliged but it later recognized that this was improper and declined to continue the practice.

5

relief pursuant to CR 76.36(4), arguing that he would suffer immediate and irreparable injury before his petition for writ would be heard. The Court of Appeals denied the motion, stating that Daniel failed to show immediate and irreparable injury. Notably, the Court of Appeals stated that in the event the trial court entered a final judgment, Daniel would be able to pursue post-judgment remedies, such as posting a supersedeas bond.

While the petition for writ was pending before the Court of Appeals, Lucia filed a motion for final judgment on March 22, 2018. The trial court entered its Findings of Facts, Conclusions of Law, Order and Judgment on May 3, 2018, disposing of the case on the merits. The final judgment provided that: (1) Lucia was entitled to immediate judgment against Daniel in the amount of $1,525,000, to be paid within ten days of entry, and if not paid within ten days, Daniel would owe the full amount of the remaining purchase price from the Settlement Agreement, totaling $1,749,964.20 plus prejudgment interest; (2) Daniel was enjoined and prohibited from transferring any other customers from the Transfer Companies to Apela (a company not involved in this case); (3) Daniel provide an itemization of all bank accounts of the Transfer Companies to ensure Lucia receives payments as contemplated by the Settlement Agreement; (4) Lucia's monitoring rights be restored in accordance with the Settlement Agreement, and (5) Daniel not be permitted to participate in Lucia's monitoring rights or frustrate them in any way.

After entry of the final judgment, Daniel filed his direct appeal to the Court of Appeals on July 9, 2018 (2018-CA-001053, the present case), but did

not post a supersedeas bond pursuant to CR 73.04. Lucia began conducting post-judgment discovery and efforts to collect the overdue payments from Daniel in the trial court. In her brief on this appeal, Lucia states that the discovery revealed that Daniel was ignoring the orders in the final Judgment, moving revenue from the Transfer Companies to undisclosed bank accounts and concealing money from Lucia.

On September 17, 2018, the trial court held a hearing on Lucia's motion to hold Daniel in contempt for his post-judgment conduct. The trial court heard arguments from both sides regarding the contempt allegations, primarily hearing testimony about the Transfer Companies having established new bank accounts in other states and using the accounts to avoid the May 3, 2018 Judgment. The trial court determined in lieu of taking additional proof on the banking issues, it "would consider implementing alternative remedies to ensure appropriate oversight of the Transfer Companies' operations during such time as the May 3, 2018 Judgment remains in force, and until such time as Daniel and the Transfer Companies may supersede the Judgment through the posting of security or otherwise." Ultimately the trial court appointed Jay Hatfield, Chief Financial Officer of the Transfer Companies, to fill a receiver-type role to satisfy concerns regarding the operation of the Transfer Companies. Importantly, the trial court noted that it "has the authority to enforce its own judgments and to remove any obstructions to such enforcement," citing the May 3, 2018 final judgment. *Akers v. Stephenson*, 469 S.W.2d 704, 706 (Ky. 1970).

Following the hearing, the trial court entered an order on September 25, 2018, providing the following: (1) all revenue and checks received by Daniel's companies must be processed through Fifth Third Bank, BB&T, or Bank of Montreal and not through any other financial institution, and Lucia shall have full access to those accounts; (2) Daniel shall not open any new accounts at the Bank of Montreal; (3) all rights of Lucia per the Settlement Agreement shall be restored, including her right to a $5,000 payment from Daniel each day, and she shall have the ability to transfer funds if the daily payments are not met; (4) Lucia must approve of any payments/transfers greater than $5,000 to any payee; and (5) Hatfield shall continue to provide Lucia reports as part of her monitoring rights.

On October 29, 2018, the parties again appeared before the court to address Lucia's efforts to collect the amounts owed to her, but unpaid by Daniel. The trial court entered an order on October 31, 2018, noting that the ongoing dispute was not typical of a post-judgment/collection process and that the purpose of the order was to enforce the parties' Settlement Agreement and bring this matter to a close. The court stated that most viable companies post a supersedeas bond to prevent debt collection efforts (*e.g.*, garnishment of bank accounts) from posing a threat to ongoing, day-to-day company operations, while, conversely, most companies in financial distress seek the protection of bankruptcy courts. The trial court noted that, Daniel having elected to do neither, the purpose of the order was to "set out in detail the ground rules for this unfortunate cat-and-mouse contest."

The October 31, 2018 order in part replaced some paragraphs of the September 29 order, and set out the following: (1) pursuant to the Settlement Agreement, the Transfer Companies shall only utilize the above-listed banks, or any bank approved in advance by Lucia and the Transfer Companies' funds shall not be diverted to any other collection mechanism; and (2) Lucia's monitoring rights shall continue. Lucia also moved to be installed as the CEO, per the Settlement Agreement, to address her contentions that Daniel was inappropriately transferring company funds, but the trial court declined to utilize that remedy at the time.

On November 5, 2018, Daniel filed a motion for interlocutory relief pursuant to CR 65.08 in the Court of Appeals. Daniel argued that (1) since the final judgment had been appealed to the Court of Appeals, the trial court lacked jurisdiction to impose new and different injunctions; (2) because the final judgment contains an award of money damages for the complete unpaid amount of the parties' contract, any injunctive order for specific performance is duplicative and contrary to law; and (3) the final judgment's injunctions and the post-appeal injunctions were improperly entered without any evidentiary hearing on the merits.

On the same day, Daniel filed a motion seeking emergency "relief from injunctions entered by the Jefferson Circuit Court, including the injunctions in the trial court's May 3, 2018 final judgment as well as additional injunctions imposed in Orders entered on September 25, 2017, and October 31, 2018." His motion was presented under CR 65.08(7), which states that "[i]f a movant

9

will suffer irreparable injury before the Court of Appeals may hear the motion, the movant may request emergency relief . . . ." Daniel argued that the trial court's orders after the final judgment "eviscerated" his right to appeal, and that the trial court lacked jurisdiction to impose the subsequent injunctions. As a result, he alleges he will suffer irreparable harm because the enforcement of the trial court orders will allow Lucia to seize the companies' capital in collecting the judgment, thereby destroying the companies.

Lucia responded to the interlocutory appeal and the motion for emergency relief, stating that Daniel has provided no evidence that the companies would suffer irreparable harm. She also noted that Daniel has had every opportunity to post a supersedeas bond to stay the effect of the trial court's final judgment but has failed to do so. Additionally, she stated that Daniel has shown no just cause for extraordinary relief because he waited *six months* after the final judgment was entered to seek interlocutory and emergency relief. While his motion was pending with the Court of Appeals, the trial court entered an order on December 3, 2018, finding Daniel in contempt of the October 31, 2018 order. The trial court imposed a civil fine of $10,000 per calendar day for every day of noncompliance with the provision of the order requiring Daniel to deposit funds from the companies' operations only in certain banks.

On December 11, 2018, the Court of Appeals denied Daniel's motion for intermediate relief pursuant to CR 65.08(7). The Court of Appeals determined that Daniel's argument lacked evidentiary support, and that "raw speculation

10

is woefully insufficient to show ruinous injury." *Gilbert v. McDonald-Burkman,* 320 S.W.3d 79, 86 (Ky. 2010). On February 19, 2019, the Court of Appeals denied Daniel's motion for interlocutory relief pursuant to CR 65.08. The Court of Appeals reasoned that Daniel's actions were interfering with Lucia's ability to collect on the judgment, and that in its subsequent orders the trial court was not ordering the parties to take any actions inconsistent with the final judgment. Citing *Chesley v. Abbott,* 503 S.W.3d 148 (Ky. 2016), the Court of Appeals observed that Lucia's actions were legitimate efforts to seek the trial court's assistance in collecting the outstanding judgment, rendering CR 65.08 inapplicable.

Daniel now appeals to this Court, seeking relief from the alleged injunctive measures imposed by the trial court. Finding the trial court's post-judgment orders to be legitimate efforts to enforce the judgment, we affirm the Court of Appeals.[6]

---

[6] As a threshold argument, Lucia states that assuming the orders are injunctions, Daniel did not comply with CR 65.08(1) and (3), which states that a party may "move the circuit court to grant, suspend or modify injunctive relief during the pendency of the appeal." A party adversely affected by the trial court's ruling on such motion may move the Court of Appeals for relief. However, given the nature of this appeal, we do not have the trial court record available and therefore are unable to confirm whether Daniel made such a motion in the trial court before pursuing interlocutory relief. Given our ultimate resolution of this appeal, Lucia's procedural argument is immaterial.

## ANALYSIS

**I.    The trial court maintained jurisdiction to enter the post-judgment orders because the orders constitute efforts to enforce the final judgment and Settlement Agreement between the parties.**

Daniel asserts that the trial court imposed the following three injunctions: (1) prohibiting his companies from transferring customers or customer accounts to third-party companies; (2) requiring his companies to disclose their bank account information within ten days of the final judgment; and (3) requiring his companies to provide Lucia with continuing access to financial and banking information. He also argues that after he filed a notice of appeal, the pendency of that appeal deprived the trial court of jurisdiction to impose these "new and different" injunctions.

Daniel notes that a trial court is generally without jurisdiction to take any action that would change or modify a judgment that is the basis of a pending appeal. While it is true that "once a notice of appeal is filed the trial court no longer retains jurisdiction to rule on motions for injunctive relief . . .," the post-judgment orders in this case were merely trial court efforts to enforce the final judgment. *Linden v. Griffin*, 436 S.W.3d 521, 523 (Ky. 2014). A trial court is empowered "to enforce its own judgments and to remove any obstructions to such enforcement." *Akers*, 469 S.W.2d at 706. The trial court orders subsequent to the final judgment did not modify or change anything in the final judgment. Rather, the orders were the court's attempts to enforce the judgment by requiring Daniel to pay Lucia, as the parties agreed to in their September 2015 Settlement Agreement.

12

To support the denial of interlocutory relief, the Court of Appeals relied on *Chesley.* In *Chesley,* the Court of Appeals denied Chesley's motion for interlocutory relief under CR 65.07, and upon review this Court held that since the trial court order was not an injunction, interlocutory relief was not proper. *Id.* at 149. The case involved attorneys who misappropriated funds and breached fee contracts in a national product liability case involving the drug fen-phen. *Id.* at 150. The former clients brought a claim for breach of fiduciary duty against the lawyers, and ultimately the trial court determined that Chesley and the other attorneys were jointly and severally liable to their clients for $42 million. *Id.* at 151. After being permanently disbarred in Kentucky, and retiring from his Ohio law practice, Chesley transferred $59 million to his former law firm, to be held in trust during the winding up of his practice. *Id.* His former clients filed a motion with the trial court to transfer Chesley's interest in the trust to satisfy the $42 million judgment, and ultimately in June 2015 the trial court ordered the trustee to make the payments. *Id.* at 152. Chesley immediately requested relief from the Court of Appeals under CR 65.07 and his motion was denied. *Id.*

On appeal, this Court determined that as a prerequisite for obtaining relief under CR 65.07 or 65.09, the order at issue must be an injunction. *Id.* Chesley argued that the trial court erred by ordering him to transfer funds held in a foreign jurisdiction, and that the order amounted to a temporary injunction because it was entered prior to the adjudication of all outstanding claims. *Id.* at 153. This Court disagreed, holding that the trial court's June

13

2015 order required Chesley to comply with the unpaid final judgment on the fiduciary duty claim and did not occur during the pendency of the case. *Id.* at 153. Although there were other claims against Chesley that had yet to be resolved, the fiduciary duty claim was complete and a judgment was entered accordingly. Therefore, the June 2015 order was "a post-judgment order in furtherance of Respondent's efforts to collect on the outstanding judgment . . ." rather than an injunction. *Id.* at 154.

"A temporary injunction generally functions to hold the status quo until the merits of an action can be decided. Although the circuit court may grant a temporary injunction, it is only empowered to do so during the pendency of the action." *Id.* at 153 (internal citations omitted). Although Chesley sought relief under CR 65.07, and Daniel sought relief under CR 65.08, the two cases share similarities. Daniel and Chesley both had monetary judgments entered against them, which specifically stated that they were final and appealable orders. *Id.* at 153. After filing a motion to reconsider and a motion to vacate the judgment, which were both denied, Chesley appealed to the Court of Appeals. *Id.* As in Daniel's case, Chesley "declined to post a supersedeas bond to stay enforcement of the judgment pending his appeal." *Id.* Because of his failure, the trial court later entered the order requiring him to transfer his trust interest to satisfy the money judgment — a post-judgment collection effort on a nearly year-old judgment. *Id.*

In Daniel's case, the final judgment was entered on May 3, 2018, making Lucia's collection and enforcement efforts over a year old. The trial court's

subsequent orders were not seeking to impose any new or different orders, but rather to enforce the final judgment that had already been entered. Although Daniel claims there are outstanding issues in this case, such as breach of contract claims against Lucia, the trial court was simply seeking to enforce the Settlement Agreement between the parties and require Daniel to make the payments owed to Lucia.

Daniel attempts to distinguish *Chesley* from his case by stating that the orders against Chesley did not include any injunctive relief under CR 65, thereby leading this Court to conclude appeal under CR 65.09 was improper. 503 S.W.3d at 152-54. Daniel states that the final judgment in his case contains injunctive orders and that the post-judgment orders include new and different injunctions than the final judgment. But all orders contained in the final May 3, 2018 judgment are in furtherance of the Settlement Agreement, and all additional orders were made in furtherance of the final judgment. As stated above, the trial court determined that Daniel engaged in business practices to deplete the companies' assets and transfer funds outside of the court's jurisdiction. Therefore, the directives in both the final judgment and the post-judgment orders were necessary to enforce the Settlement Agreement. Daniel further argues that he was never provided with a "full and fair opportunity" to present his case opposing "temporary or permanent injunctive relief on the merits," but having reviewed the record on this appeal, we disagree.

15

As in *Chesley,* Daniel failed to post a supersedeas bond, claiming that posting such a bond would cause the companies to endure financial hardship, and cause irreparable injury including complete destruction of the companies in this litigation. While a party pursuing appeal is not required to post a supersedeas bond, the bond would best protect all parties' interests while the appeal is pending.

> Generally a supersedeas bond is posted at or near the time that the notice of appeal is filed. Both the appellant and a "good and sufficient surety" sign the bond. The bond stays execution of the judgment and is conditioned on the "satisfaction of the judgment in full . . . if the judgment is affirmed" on appeal. In other words, it is simply a promise by an appellant and the surety to pay the judgment if it is affirmed. Because of the risk they take, sureties naturally charge a fee for executing a supersedeas bond. A party, however, does not need to post a supersedeas bond to take an appeal from a judgment. The failure to post a bond, however, leaves the party who obtained the judgment free to execute on it, though the party who executes on a judgment during the pendency of an appeal of the judgment does so at his or her own risk because, if the judgment is reversed, any benefits obtained by virtue of the execution must be restored to the adverse party.

*Elk Horn Coal Corp. v. Cheyenne Res., Inc.,* 163 S.W.3d 408, 419–20 (Ky. 2005). Since Daniel did not post a supersedeas bond to secure the judgment amount, Lucia is free to execute on the judgment and collect the amount owed to her. This is exactly what she has done. All orders entered after the final May 3 judgment have been authorized attempts to enforce the court's orders — to collect for Lucia what she is owed by Daniel.

16

Although the complete trial court record is not available for review on this appeal, the trial court orders attached to the briefs make it very clear that Daniel has engaged in questionable business practices, delayed the litigation through procedural tactics, and moved customers and funds around to avoid paying the judgment. Given the lengthy history of this case and the allegations and trial court findings of improper business actions, the trial court's specific and limited post-judgment orders were necessary and proper.[7]

## CONCLUSION

In sum, the trial court orders simply seek to enforce a judgment that is entirely based on the Settlement Agreement that Daniel voluntarily entered into with Lucia. Without posting a supersedeas bond, Daniel cannot stay the enforcement of the judgment while his several appeals are pending. Lucia is entitled to collect on the judgment, and the trial court is empowered to aid in the collection efforts. Accordingly, we affirm the Court of Appeals' denial of interlocutory relief.

Minton, C.J.; Buckingham, Hughes, Keller, VanMeter, and Wright, JJ., sitting. All concur. Lambert, J., not sitting.

---

[7] Lucia alternatively argues that Daniel has failed to establish "extraordinary cause" for relief pursuant to CR 65.09(1). We have found the post-judgment orders are not injunctions and thus CR 65.08 and 65.09 are not applicable.

17

COUNSEL FOR APPELLANTS:

Jill F. Endicott
Robert Kenyon Meyer
Jeremy Stuart Rogers
Marisa Elizabeth Main
Dinsmore & Shohl, LLP


COUNSEL FOR APPELLEES:

Alan N. Linker
Seiller Waterman LLC

David B. Tachau
Tachau Meek PLC

Paul Joseph Hershberg
Paul Hershberg Law, PLLC